**Janet RIDGEWAY, Executrix of the ESTATE OF Byron A. RIDGEWAY, Appellee,**

v.

**U.S. LIFE CREDIT LIFE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 2, 2001.
Filed Feb. 28, 2002.

S. Asher Winikoff, Pittsburgh, for appellant.

Kelly M. Tocci, Aliquippa, for appellee.

Before: DEL SOLE, P.J., LALLY–GREEN, and TAMILIA, JJ.

LALLY–GREEN, J.

¶ 1 This is an appeal by permission from the order of the Court of Common Pleas of Beaver County dated September 21, 2000, denying the preliminary objections of Appellant, U.S. Life Credit Life Insurance Company. We reverse and remand.

¶ 2 The trial court summarized the facts of Appellee Janet Ridgeway's complaint as follows:

[Ridgeway] is the executrix of the estate of Byron A. Ridgeway (the "Decedent"), her late husband. [Appellant] is an insurance company. In January of 1995, [Appellant] issued a policy of mortgage life insurance under which the Decedent was the insured, a mortgagee was the first beneficiary, and [Ridgeway] was the second beneficiary. When the Decedent died in August of 1995, [Appellant] refused to pay the policy benefits. On August 19, 1996 at No. 11585 of 1996 in this court, [Ridgeway] was compelled to file an action (the "First Action") alleging breach of contract and bad faith conduct on the part of [Appellant].

In April of 1998, without [Ridgeway's] knowledge or consent, [Appellant] paid the sum of $53,768.02 directly to the mortgagee. At the time set for trial, in October of 1999, [Appellant] agreed to pay [Ridgeway] all damages arising out of the breach of contract claim ($18,964), and the case went to trial on the bad faith claim alone. Following a bench trial, on December 16, 1999 the trial court entered a verdict in the amount of $95,000 in favor of [Ridgeway] and against [Appellant].

The complaint in this case then sets forth a chronology of a series of dilatory tactics and steps taken by [Appellant] to avoid and forestall payment of the $18,964 which it had agreed to pay on October 26, 1999 and the $95,000 verdict entered against it on December 16, 1999. (No post-trial motions having been filed, judgment was entered on that verdict on January 20, 2000.) [Appellant] finally paid the $18,964 promised in October of 1999 on December 30, 1999. At first it made no response to requests by [Ridgeway's] counsel for payment of the $95,000 verdict, which was now reduced to judgment. On February 1, 2000, [Appellant's] counsel wrote [Ridgeway's] counsel, stating that the $95,000 judgment would be paid when [Appellant] had received from [Ridgeway] a certificate evidencing settlement and discontinuance of the First Action. Counsel for [Ridgeway] understandably refused to do that. [Ridgeway] was compelled to certify the docket of the First Action and transfer the judgment to the Circuit Court of Cook County, Illinois, the county in which [Appellant] is registered to do business.

[Ridgeway] filed her complaint in this action on April 3, 2000. [Appellant] issued payment in the amount of $95,000 to [Ridgeway] and her attorney on or about April 10, 2000, one week later. The $95,000 judgment debt owing from

the First Action was not paid until this action had been brought.

Trial Court Opinion, 2/9/01, at 2–4.

¶ 3 Appellant filed preliminary objections in the nature of a demurrer to Ridgeway's complaint. The trial court denied those objections on August 9, 2000. Appellant petitioned the trial court to certify the August 9th order as appealable, at this Court's discretion pursuant to 42 Pa.C.S.A. § 702(b).[1] The trial court granted the petition. Appellant then filed a petition in this Court for permission to appeal the August 9th order under § 702(b). This Court granted the petition. Appellant filed a statement under Pa.R.A.P.1925(b), and the trial court issued its opinion. This appeal followed.

¶ 4 Appellant presents one issue for our review:

Whether Ridgeway, who secured a judgment in a bad faith action pursuant to 42 Pa.C.S.A. § 8371 against U.S. Life, may maintain a second bad faith action against U.S. Life for failure to pay that judgment.

Appellant's Brief at 5.

¶ 5 Our standard of review in this case is as follows:

A demurrer can only be sustained where the complaint is clearly insufficient to establish the pleader's right to relief.... For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts ... and every inference fairly deducible from those facts.... The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer.... Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted.... If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected.

*Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 894–895 (1995).

¶ 6 Appellant presents an issue of first impression. "When presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would do." *Brown v. Candelora*, 708 A.2d 104, 112 n. 7 (Pa.Super.1998) (emphasis omitted).

¶ 7 Ridgeway alleges that Appellant committed bad faith with respect to payment of the settlement reached in Ridgeway's prior lawsuit and, also, with respect to the payment of the judgment awarded Ridgeway for Appellant's prior bad faith. Ridgeway rests this argument on 42 Pa. C.S.A. § 8371, which provides a remedy for the victims of an insurance company's bad faith. Appellant argues that this section cannot apply to suits initiated to collect on settlements or judgments.

1. 42 Pa.C.S.A. § 702(b) states:
   **(b) Interlocutory appeals by permission.—** When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

¶ 8 When a court interprets a statute, it must not pursue statutory construction where the intent of the legislature is clear from the plain meaning of the statute. 1 Pa.C.S.A. § 1921(b); *see also, Ramich v. Worker's Comp. App. Bd. (Schatz Electric, Inc.)*, 564 Pa. 656, 770 A.2d 318, 322 (2001). When the words of a statute are free from all ambiguity, we must not disregard the letter of the law under the pretext of pursuing its spirit. *Ramich*, 770 A.2d at 322. Thus, we first examine the plain meaning of the statute.

¶ 9 Section 8371 reads:

### § 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. The controlling language for the present case is "[i]n an action arising under an insurance policy." This phrase is not defined in the statute. Thus, we must interpret this section by the plain meaning and common usage of the words. 1 Pa.C.S.A. § 1903(a).

¶ 10 To determine the plain meaning of the phrase, we refer to the dictionary definitions of the above words. *Tyler v. Motorists Mutual Insurance Co.*, 779 A.2d 528, 531 (Pa.Super.2001). "Arise" is defined as "to come into being, action, or notice; originate; appear; spring up; to result or proceed; spring or issue." Webster's New Universal Unabridged Dictionary 113 (1996). "Insurance" is defined as:

> the act, system, or business of insuring property, life, one's person, etc, against loss or harm arising in specified contingencies, as fire, accident, death, disablement, or the like, in consideration of a payment proportionate to the risk involved. Coverage by contract in which one party agrees to indemnify or reimburse another for loss that occurs under the terms of the contract; the contract itself, set forth in a written or printed agreement or policy.

*Id.* at 989. Black's Law Dictionary defines a "policy of insurance" as:

> An instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss, by making him a payment in compensation, whenever the event shall happen by which the loss is to accrue. Contract whereby insurer, in return for premiums, engages, on happening of designated event, to pay certain sum as provided. The written instrument in which a contract of insurance is set forth.

Black's Law Dictionary 1157 (Sixth Ed.1990). Thus, the phrase "in an action arising under an insurance policy" means that the insured's cause of action must originate from a writing setting forth an agreement between the insured and insurer that the insurer would pay the insured upon the happening of certain circumstances.

¶ 11 Here, Ridgeway is bringing an action as a judgment creditor, and not as a claimant under an agreement between Appellant and Ridgeway that Appellant would pay Ridgeway under the happening of certain circumstances. Thus, Ridgeway does not bring an "action under an insurance policy." Thus, Appellant's claim has

merit under the plain meaning of Section 8371.

¶ 12 Next, we look to the purpose of Section 8371 and relevant case law in order to determine if Ridgeway's position is consistent with the spirit of the statute.[2]

¶ 13 This Court has stated that the purpose of Section 8371 is:

> to provide a statutory remedy to an insured when the insurer denied benefits in bad faith. Upon review of the express language and purpose of section 8371, it appears clear that the Pennsylvania legislature intended this section to protect an insured from bad faith denials of coverage.

*General Accident Insurance Co. v. Federal Kemper Insurance Co.*, 452 Pa.Super. 581, 682 A.2d 819, 822 (1996). The duty to act in good faith stems from the insurer's fiduciary status under the insurance contract, which gives the insurer the right to handle claims and control settlement. *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994).

¶ 14 The scope of Section 8371 has been extended to the investigatory practices of an insurer during litigation initiated by an insured to obtain the proceeds of his or her insurance policy. *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901 (Pa.Super.1999) (conduct of an insurer during litigation may be considered as evidence of bad faith under Section 8371). In dicta, the *O'Donnell* Court stated: "we find that the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation." *Id.* at 906.[3]

¶ 15 The trial court in Appellant's case found *O'Donnell* to be dispositive. Trial Court Opinion, 2/9/01, at 4–5. We disagree. Even though *O'Donnell's* dicta suggests that the scope of Section 8371 includes post-litigation conduct, *O'Donnell* is distinguished on its facts because that court dealt only with bad faith that occurred during litigation of the insurance claim. *O'Donnell*, therefore, does not control Appellant's case.

¶ 16 Here, Ridgeway is not suing to obtain proceeds from an insurance policy improperly denied her; she is suing to obtain payment on a settlement and judgment. Since *O'Donnell* does not control Ridgeway's case, the trial court erred in concluding that *O'Donnell* provides a cause of action for Appellant's alleged bad faith following a settlement and judgment.

¶ 17 We now address whether Section 8371 should apply to post-judgment or post-settlement conduct by an insurer, even though the plain meaning does not permit such interpretation. Ridgeway argues that the spirit of the section is to provide a remedy for all bad faith by an insured, regardless of the circumstances. We disagree. We observe that the General Assembly limited the section by the prefacing phrase "arising under an insurance policy." Once settlement has been

---

**2.** Section 8371 was drafted in response to our Supreme Court's decision not to create a common law cause of action for bad faith by insurance companies in handling claims of insureds. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966, 970 (1981) (no common law cause of action for bad faith by insurance companies in the handling of insureds' claims). The General Assembly responded with Section 8371, which provided the remedy sought by the insured plaintiff in *D'Ambrosio*. *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901, 905 (Pa.Super.1999).

**3.** The Court held that Allstate had not committed bad faith during the litigation, but simply was acting within the proper sphere of a legal adversary. *Id.* at 910.

reached or a judgment has been entered against the insurer, the insurer's fiduciary duty as insurer is extinguished. *Romano.* Thus, the spirit and application of Section 8371 also ceases.

¶ 18 Ridgeway's remedy for non-payment of the judgment is provided for by the Pennsylvania Rules of Civil Procedure for the enforcement of money judgments.[4] Also, Ridgeway may enforce her settlement agreement with Appellant pursuant to the law on contracts. *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531 (1999) (generally, enforceability of settlement agreements is governed by principles of contract law). These methods of enforcement provide adequate protection to an insured who has settled with, and obtained a money judgment against, her insurer for its bad faith conduct.

¶ 19 Based on the foregoing, we hold that the scope of Section 8371 does not include post-judgment or post-settlement conduct by an insurer.

¶ 20 Order reversed. Case remanded for the trial court to enter an order sustaining Appellee's preliminary objections and dismissing Ridgeway's complaint with prejudice.[5] Jurisdiction relinquished.

---

4. Generally, judgments are enforced by a writ of execution pursuant to Rule 3102. Additionally, 42 Pa.C.S.A. § 8101 states that "a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award."

5. Where we reverse an order of the trial court denying preliminary objections relating to whether a party may go forward with her cause of action, the proper procedure is for the case to be remanded to the trial court for proceedings consistent with our opinion. *In re: Adoption of Baby Boy Wims,* 454 Pa.Super. 498, 685 A.2d 1034, 1037 (1996).