903 A.2d 1185

Jean A. HOLLOCK, Appellee

v.

ERIE INSURANCE EXCHANGE, Appellant.

Supreme Court of Pennsylvania.

Resubmitted March 7, 2006.

Decided Aug. 22, 2006.

Maureen Murphy McBride, William H. Lamb, James C. Sargent, Lamb McErlane, P.C., West Chester; Neil Coleman Schur, James Charles Schwartzman, Stevens & Lee, P.C., Philadelphia, Daniel B. Huyett, Stevens & Lee, P.C., Reading, George Thompson Bell, Harrisburg, for Erie Ins. Exchange, appellant.

James Michael Beck, Dechert, L.L.P., Philadelphia, for Products Liability Advisory Council, Inc., appellant amicus curiae.

Richard Bruce Morrison, Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Bethlehem, for Pennsylvania Defense Inst., appellant amicus curiae.

Michael Patrick Bodosky, Patricia Hale Becker, Mayer, Brown, Rowe & Maw, L.L.P., Washington, DC, for Chamber of Commerce of the U.S. appellant amicus curiae.

Brian Kyle Hanstein, James C. Haggerty, Swartz Campbell, P.C., Philadelphia, for Inc. Federation of Pennsylvania and Property & Cas. Insurers Assoc. of America, appellant amici curiae.

Christine S. Lezinski, John Joseph Warring, Timothy George Lenahan, Lenahan & Dempsey, P.C., Scranton, for Jean A. Hollock, appellee.

Arthur L. Bugay; Gelfand Berger, L.L.P., Philadelphia, for Pennsylvania Trial Lawyers Ass'n, appellee amicus curiae.

John Norig Ellison, Timothy Patrick Law, Anderson Kill & Olick, P.C., Philadelphia, for United Policyholders, appellee amicus curiae.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *ORDER*

PER CURIAM.

The appeal is hereby dismissed as having been improvidently granted.

Chief Justice CAPPY files a dissenting statement in which Justice CASTILLE joins.

Chief Justice CAPPY dissenting.

As I do not agree that this case should be summarily dismissed without an opinion on the merits of the claims presented, I am compelled to dissent.

I believe this case presents important issues regarding whether the trial court may consider the conduct of an insurer during the litigation of a bad faith claim brought pursuant to 42 Pa.C.S. § 8371, the formulation of an award of punitive damages where there is a finding of bad faith vis-à-vis a claim made under a policy of insurance, and the standard of review an appellate court should utilize in reviewing an appeal of an award of punitive damages. By failing to confront these questions today, we simply delay the task and allow the lower courts to continue to follow, what I believe is, an incorrect application of this statutory claim. The current case presents an excellent vehicle to consider all aspects of these issues. The trial court developed a complete record with well-articulated findings as to the conduct of Appellant, Erie Insurance Exchange, on the initial processing of the insurance claim, and during the course of the litigation on the bad faith suit. The

trial court admitted that the conduct of Appellant during the litigation formed, in part, the basis of the award of punitive damages under § 8371. To assist review of this claim there is a published en banc decision of the Superior Court, squarely addressing the questions.

What is lacking is an analysis by this court of the language of the statute, the intent of the legislation, and the policy considerations relevant to a resolution of these issues. For these reasons, I believe this court should go beyond entry of a simple order and, instead, offer the bench and bar below a well-reasoned opinion discussing the issues presented.

In 1990, the Pennsylvania Legislature established a statutory remedy familiarly known as the "bad faith" statute. The statute, at 42 Pa.C.S. § 8371, is found under the subchapter heading, SPECIAL DAMAGES, and is titled, **Actions on Insurance policies;** it provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

1990, Feb. 7, P.L. 11, No. 6, § 3, effective July 1, 1990.

In the case at bar, Appellee, Jean Hollock, brought an action under § 8371 against Appellant. For purposes of this dissenting statement, based on the conclusions of the lower courts, and the parameters of the limited grant of allocatur, we accept that Appellant acted in bad faith [1] in its failure to

---

1. Although this Court has not spoken to the definition of "bad faith" the Superior Court has consistently held that bad faith under the statute is established on a showing that the insurer breached its duty to act in good faith and fair dealing with its insured by any frivolous or unfounded refusal to pay the policy through some motive of self-interest or ill will. *See O'Donnell v. Allstate,* 734 A.2d 901, 905 (Pa.Super.1999); *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa.Super.

investigate, process, and satisfy Appellee's claim for proceeds under her policy of insurance. (For a detailed statement of the facts and procedural history see the decision of the Superior Court at *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 411–13 (Pa.Super.2004)). During the course of the bad faith litigation, the trial court found Appellant behaved in a manner intended to obfuscate the litigation process. (Trial Court Findings of Fact, ¶¶ 154–57). The conduct of Appellant during discovery and throughout the course of the trial was found lacking in professionalism. In fact, the trial court found the testimony of Appellant's principal witnesses to be so lacking in credibility as to constitute blatant attempts to undermine the truth determining process. (Trial Court Conclusions of Law, ¶ 80). After entering judgment in Appellee's favor on the bad faith claim, the trial court specifically considered the actions of Appellant during the course of trial in setting the amount of the award of punitive damages. (Trial Court Conclusions of Law, ¶ 103).

On appeal, the Superior Court affirmed. The Superior Court rejected Appellant's argument that the trial court erred in considering the conduct of the insurer during the course of the litigation of a bad faith claim as relevant to a finding of bad faith on the underlying insurance matter, and as a factor in the subsequent award of punitive damages. In reaching its conclusion the Superior Court discussed its previous decisions in *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901 (Pa.Super.1999), and *Ridgeway v. United States Life Credit Life Ins. Co.*, 793 A.2d 972 (Pa.Super.2002).

In *O'Donnell*, the insured became frustrated with the delay in processing a claim under a policy of insurance for damages arising during the course of a burglary and initiated suit under § 8371 against the insurer. During the course of the bad faith litigation, the insured objected to the tactics of the insurer throughout the discovery process, and requested that the jury be instructed to consider the conduct of the insurer in the

108, 649 A.2d 680, 688 (1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995); *Romano v. Nationwide Mutual Fire Insurance Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994).

course of the litigation as relevant to a finding of bad faith. The *O'Donnell* court held that the conduct of an insurer during the litigation of the bad faith claim *may* be considered as evidence of bad faith in an action under 42 Pa.C.S. § 8371. 734 A.2d at 907. This holding did not benefit the insured, as the court failed to award a new trial on this basis, ultimately concluding that the insured failed to sustain her burden in showing that the conduct of the insurer was improper. *Id.*[2]

The insured in *Ridgeway* obtained a judgment on a bad faith claim and then encountered difficulty in securing payment on the judgment. The insured instituted a second bad faith claim asserting the actions of the insurer in failing to satisfy the judgment on the initial bad faith claim. The Superior Court rejected this second action as beyond the scope of the bad faith statute, which it found limited to protecting an insured from bad faith denials of coverage. 793 A.2d at 977. The *Ridgeway* court held that the insured had remedies for the enforcement of money judgments that would provide relief for the conduct of the insurer in this case, and that the bad faith statute was not the appropriate avenue to pursue the insurer's actions post judgment. *Id.*

In the instant case, the Superior Court found that *O'Donnell* and *Ridgeway* were sufficiently distinguishable from one another on the scope of the duty of an insurer towards its insured. *Hollock*, 842 A.2d at 415–16. The breaking point is the litigation arising from the insurance policy. The Superior Court found that the insurer has a continuing obligation to act in good faith towards its insured throughout the course of the litigation arising under the insurance policy. Once that litigation has concluded the obligation to act in good faith is terminated. Accordingly, the conduct of the insurer during the course of the litigation proceeding from the statutory cause of action is a relevant factor in arriving at a judgment on the question of bad faith itself. *Id.* at 416. The court then

2. In reaching its ultimate conclusion, the court recognized that the Pennsylvania Rules of Civil Procedure provide exclusive remedies for discovery abuses, and that the insured failed to access those remedies. *Id.* at 909 (*citing* Pa.R.C.P. No. 4011(a), (b)).

went on to approve the trial court's award of punitive damages; an award also arrived at by factoring in the conduct of the insurer during the bad faith litigation itself. *Id.* at 422.

I take issue with the conclusion of the Superior Court in extending the insurer's duty to act in good faith throughout the litigation on the bad faith claim, and within the award of punitive damages.[3] In my opinion, once an action has been initiated by an insured against the insurer under the bad faith statute, the relationship has been severed and the duty of good faith and fair dealing no longer remains. It is only the conduct of the insurer in the processing of the insurance claim that is relevant to the resolution of the bad faith action. Should the insurer act inappropriately during the litigation process, that conduct can be addressed through other available means. Reading the bad faith statute as extending the duty of the insured beyond the life of the insurance policy is simply, in my opinion, incorrect.

Because a bad faith claim is a creature of statute, the question of the extent of an insurer's duty to an insured is one that must be resolved under the rules of statutory interpretation. The following rules dictate our analysis on this issue.

### 1 Pa.C.S.A. § 1921 Legislative intent controls.

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

---

**3.** Appellee argues that this issue has been waived. The waiver assertion is without merit. While the precise statement of the issue before us has been altered, the wording of an issue as it winds its way through the appellate process may change, as it must, to acknowledge the differing levels of review between the trial, intermediate, and final appellate stages of a case. This alteration in language does not, and cannot be, a valid basis upon which to argue waiver so long as the legal issue remains the same.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and the necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1972, Dec. 6, P.L. 1339, No. 290, § 3, imd. effective.

Thus, we begin with pertinent words of the statute:

In an *action arising under an insurance policy,* if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions. . . .

42 Pa.C.S. § 8371 (emphasis supplied).

The obvious problem in looking at the words is the lack of clarity on the question of where the line should be drawn on the scope of the "action arising under an insurance policy" when assessing whether the insurer acted in bad faith. Is the scope of conduct limited to the conduct of the insurer on the underlying policy as Appellant argues, or does it extend to the entire litigation that resulted from the initial claim under the insurance policy, as the Superior Court found. As either interpretation can be supported by the words of the statute, the words are not clear and free from all ambiguity, and thus, we turn to consideration of the factors set forth in 1 Pa.C.S.A. § 1921.[4]

The occasion and necessity for the statute is the starting point. 1 Pa.C.S.A. § 1921(c)(1). Although the statute was

4. A conclusion that a particular word or phrase in a statute is not clear and free from all ambiguity does not signify that the entire statute is ambiguous.

enacted ten years later, it is assumed by most commentators to have been drafted in response to the decision of this court in *D'Ambrosio v. Pennsylvania National Mut. Cas. Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981).[5] In *D'Ambrosio*, this court rejected the plaintiff's attempt to supplement the remedies of the Unfair Insurance Practices Act [6] with an action in trespass for emotional distress and punitive damages in a first party benefit situation, because of the insurer's bad faith in denying a claim. *Id.* at 970. *D'Ambrosio* stood in contrast to the decision in *Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957), where the Court recognized the duty of an insurer to act in good faith when representing the rights of its insured against a third party. *Id.* at 227–228. Whether *D'Ambrosio* was the direct catalyst to § 8371 or not, what is obvious from this backdrop is that the occasion and necessity for the legislation was to provide all insured's, whether first party or third party claimants, the same remedy for bad faith. 1 Pa.C.S.A. § 1921(c)(1).

The circumstance for the legislation was the revelation that this Court considered the enactment of the Unfair Insurance Practices Act as the global response from the Legislature in providing a remedy for all policyholders involving unfair trade practices arising between an insurer and insured. *D'Ambrosio* 431 A.2d at 970; 1 Pa.C.S.A. § 1921(c)(2). Likewise, the mischief to be remedied was filling in the gap for general complaints of trade-wide practices by permitting individual first party and third party claims of bad faith regarding settlement or adjustment practices arising on claims made under a policy of insurance. 1 Pa.C.S.A. § 1921(c)(3). The object to be attained was to compensate an insured for the financial burden suffered because of the bad faith of the insurance company in the processing of a claim. 42 Pa.C.S.

---

5. Richard L. McMonigle, Jr., Insurance Bad Faith in Pennsylvania § 2:08, 6th ed. 2005.

6. The Unfair Insurance Practices Act at 40 P.S. § 1171.1, *et seq.*, was enacted to regulate trade practices in the insurance industry; targeting unfair methods of competition among insurance companies and unfair and deceptive practices in the industry. see, 40 P.S. § 1171.2 **Declaration of Purpose.**

§ 8371 §§ (1)-(3), (providing for damages costs and fees to be assessed against the insurer upon proof of bad faith). 1 Pa.C.S.A. § 1921(c)(4).

Related statutory provisions on the same subject are of course found in the Unfair Insurance Practices Act. 1 Pa. C.S.A. § 1921(c)(5). A review of the Unfair Insurance Practices Act reveals that it was intended to create administrative oversight of the insurance industry for the protection of the public as a whole, with provision for civil penalties to be imposed on insurance companies and agents for violating the act by the Insurance Commissioner. 40 P.S. §§ 1171.7, 1171.9 and 1171.11. Pertinent to the issue before us herein, the Unfair Insurance Practices Act displays a focus on the conduct of the insurer and the insured in the context of insurance policies. Absent a contract between the parties, there would not be a reason to implement the Unfair Insurance Practices Act. This point is of importance as the scope of the two pieces of legislation is in harmony on the question of the boundaries of the relationship between the insurer and insured wherein the insurer owes a duty to the insured. The boundary is clearly a policy of insurance, for without that feature there is no relationship between the insurer and the insured.

Finally, the only remaining point of statutory construction relevant to this particular case is 1 Pa.C.S.A. § 1921(c)(6), "the consequences of a particular interpretation." The interpretation currently endorsed by the Superior Court, and sub silentio by this Court, is one that expands the concept of duty flowing from insurer to insured past the point of their contractual relationship. This interpretation is fraught with disaster.

Specifically, a bad faith lawsuit is established when the insured proves a breach of the duty of good faith in fair dealing that the insurer owes the insured when processing or settling a claim under a policy of insurance. The relationship between the parties is defined by the insurance policy. Once that policy has been terminated, the claim paid, or the claim denied the relationship is over. In its simplest terms, the duty to act in good faith has been dissolved once the insured and insurer become adversaries in a bad faith suit. To find

otherwise extends the duty of the insurer to an untenable limit. When a patient files a malpractice action against his physician, the doctor/patient relationship has been severed; when a client dismisses his attorney and files a malpractice action the attorney/client relationship is severed. Innumerable examples of this nature exist and do not need to be listed herein. When the relationship has been severed, there can no longer be a duty to act in good faith flowing from one to another; the actions of the parties must be measured by a different instrument.

In fact, the law currently provides other means for regulating the civility and professionalism of parties during the course of litigation. The rules of civil procedure, the disciplinary process, and the contempt powers of the courts, have always been sufficient instruments to harness the behavior of the litigants. The bad faith statute was not intended to replace or duplicate these very adequate tools.

Thus, based upon the statutory construction analysis above, I conclude the Legislature intended that only the acts of the insurer on the underlying denial of benefits on the insurance policy at issue are relevant to a finding of bad faith. The conduct of the insurer during the course of the litigation on the bad faith claim itself is not relevant to the conduct in dealing with claims under a policy of insurance. In my opinion, once the insurer is asked to defend an action under the statute, there can no longer be a relationship with its insured subject to a duty to act in good faith; adequate means exist to control the behavior of the insurer, or any party, during the litigation. Because I would find that the Superior Court erred in affirming the finding of bad faith, insofar as that conclusion considered the conduct of the insurer during the course of the litigation itself, I would reject the decision of the Superior Court on that point.[7] Furthermore, because the

7. As noted previously, the trial court set forth extensive findings of fact and conclusions of law as to the bad faith conduct of Appellant in its handling of the insurance claim at issue. Given those findings, the judgment of bad faith can and should be supported. I would however, affirm that judgment on different grounds and expressly reject the

trial court considered the behavior of Appellant during trial within the factors used in awarding punitive damages that award must be vacated and the matter remanded for a new assessment of punitive damages. On remand, the trial court should employ the test set forth in *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), in assessing the amount of punitive damages.[8]

For the reasons stated above, I would prefer this Court to address the issues presented on their merits rather than summarily dismiss the appeal; as to the merits, I would affirm the judgment of bad faith on other grounds and remand for a new assessment of punitive damages.

Accordingly, I dissent.

Justice CASTILLE joins this dissenting statement.

concept that the conduct of the insurer during the course of the litigation in a bad faith claim is at all relevant to a finding of bad faith.

8.   Because of the current posture of this case, I will forgo a discussion on the merits of the *State Farm* test.