J. A25010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHARLES MAYNARD COLONY AND PAUL MARKLEY, LATE, TRADING AS HAWKWING PARTNERSHIP | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| DOBERMAN GROUP, INC., WALTER DOBOZYNSKI, CLARENCE KAUFFMAN, STEVEN CONN AND HENRY OBER, | : : : : : | |
| Appellants | : : | |
| BRUMBAUGH LUMBER CO., MIFFLIN COUNTY COMMISSIONERS, & HARRIET CLARK | : : : | No. 590 MDA 2016 |

Appeal from the Judgment Entered April 7, 2016,
in the Court of Common Pleas of Mifflin County
Civil Division at No. CP-44-CV-1361-1996

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 03, 2017**

Doberman Group, Inc., Walter Dobozynski, Clarence Kauffman, Steven Conn, and Henry Ober (collectively, "appellants") appeal from the $242,326 judgment entered in favor of Charles Maynard Colony and Paul Markley, late, trading as Hawkwing Partnership (collectively,

---

* Former Justice specially assigned to the Superior Court.

"appellees"), following the denial of appellants' post-trial motions. After careful review, we affirm.[1]

The trial court set forth the relevant facts and procedural history of this case as follows:

> In this action, which was filed September 12, 1996 [and amended on January 13, 1997], [a]ppellees sought to quiet title to real estate located partially in Granville Township, Mifflin County, and partially in Derry Township, Mifflin County. In addition, they sought compensatory and punitive damages for timber cut and removed by [a]ppellants on the property they claimed to own. Finally[,] they asked that the corporate veil be pierced and that judgments be entered against the individual [appellants]. [Appellants, in turn, filed an answer with a new matter and counterclaim on February 14, 1997.]
>
> As we have noted in prior opinions, this litigation spawned at least five (5) other cases. This fact is set forth as a partial explanation for the long delay in this case since the attitude of counsel has always been that resolution of the collateral litigation was necessary to a final resolution of this case.
>
> Procedurally, Mifflin County President Judge Timothy S. Searer by order dated June 1[6], 1997, bifurcated the issues relating to the ownership and location of the real estate and liability for damages. The issues of ownership and location were tried to the Court [on] June 16[-]17, 1997. Thereafter on August 24, 1998, Judge Searer filed his adjudication concerning the real estate. [(*See* trial court opinion ("Searer opinion"), 8/25/98; certified record at 37.)] Appellants filed a timely Motion for Post-Trial Relief

---

[1] The record reflects that intervenor Brumbaugh Lumber Company terminated its action in 2015, and the claims of the Mifflin County Commissioners and intervenor Harriet Clark were resolved prior to this appeal.

on September 3, 1998. After argument Judge Searer entered an order on December 15, 1998, in which he amended his prior order [entered August 25, 1998] in two (2) particulars. Both of the adjudicatory orders made by Judge Searer have been appealed by [a]ppellants.

The damage phase of this case as well as the request that the corporate veil be pierced was tried before [the Honorable Stewart L. Kurtz] on October 7, 2014. [The record reflects that appellants Kauffmann and Ober died prior to the October 7, 2014 trial.] By Order and Memorandum [dated] September 4, 2015 [and filed September 8, 2015], judgment was entered in favor of [a]ppellees and against [appellants], and damages in the amount of Two Hundred Forty-Two Thousand Three Hundred Twenty-Six and No/100 ($242,326.00) Dollars were awarded. [(*See* trial court opinion ("Kurtz opinion"), 9/8/15; certified record at 152.)]

Rule 1925(a) opinion, 5/19/16 at 2-4 (footnote omitted); certified record at 169.

On September 17, 2015, appellants filed a timely post-trial motion, challenging the trial court's establishment of the boundary line, the amount of damages awarded, and the fact that the trial court failed to join indispensable parties. (*See* "Motion for Post-Trial Relief," 9/17/15 at 2-3, ¶¶ A-C.) The trial court heard arguments on December 11, 2015. On March 28, 2016, the trial court entered an order denying appellants' post-trial motion and filed an 11-page opinion in support of its order. (*See* trial court opinion, 3/28/16; certified record at 158.) Appellants filed a praecipe to enter judgment on April 7, 2016. On April 13, 2016, appellants filed a notice of appeal. On April 20, 2016, the trial court directed appellants

to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellants filed a timely Rule 1925(b) statement on May 5, 2016. Thereafter, on May 19, 2016, the trial court filed its Rule 1925(a) opinion.

Appellants raise the following issues for our review:

1.   [Whether t]he trial court's decision is unsupported by the evidence when the original Warrants indicated the correct acreage and boundaries[?]

2.   [Whether t]he trial court committed an error of law or abused its discretion by concluding that the Township line as established by the [trial] court constituted the boundary line between the McCormick and Reiley Warrants[?]

. . . .

3.   Assuming the trial court correctly decided the revised Township boundary line was the correct boundary line as stated in its December 1998, Opinion, [did] the trial court err[] as a matter of law or abuse[] its discretion when it did not consider the fact that the parties' predecessors in title recognized and consented to the boundary line[?]

[4].  [Whether t]he trial court erred as a matter of law or abused its discretion by awarding [a]ppellees double the amount of damages under the Timber Trespass law[, 42 Pa.C.S.A. § 8311?]

. . . .

[5].  [Whether t]he trial court erred as a matter of law or abused its discretion in calculating the underlying amount of damages for the harvested timber[?]

- 4 -

[6]. [Whether t]he trial court erred as a matter of law by failing to join indispensable parties whose property lines were changed by the decision when the decision impaired the rights of those persons and entities[?]

Appellants' brief at 4 (headings omitted; numeration amended).[2]

Preliminarily, we note that our standard of review in non-jury cases is:

limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

***Christian v. Yanoviak***, 945 A.2d 220, 224 (Pa.Super. 2008) (citation omitted).

Appellants' first three claims concern Judge Searer's determination of the boundary line between the parties' respective properties. The record reflects that Judge Searer made the following findings of fact with regard to the ownership and location of the disputed property:

1. [Appellees] and [appellants] both claim the same tract of wild, uncultivated, unenclosed mountain ground.

---

[2] To the extent appellants' issues are interrelated, we will address them simultaneously.

2. The lands at issue consist of lands originally warranted in the names of William [Reiley][3] and James McCormick. **See** [appellees'] Exhibits 2 and 3.

3. [Appellees'] Exhibit 1 is a [September 18, 1996] survey of the lands at issue and is an accurate depiction of the lands originally warranted in the names of William [Reiley] and James McCormick.

4. The land from the [Reiley] warrant is depicted as the western portion of the lands claimed by the [appellees] in [appellees'] Exhibit 1.

5. The land from the McCormick warrant is depicted as the eastern portion of the lands claimed by the [appellees] in [appellees'] Exhibit 1.

6. [Appellees'] Exhibit 4 sets forth the official legal boundary line between Derry Township and Granville Township.[4]

7. [Appellees'] Exhibit 1 accurately depicts the position of the boundary line between Derry Township and Granville Township.

Searer opinion, 8/25/98 at 2 (emphasis added).

---

[3] We note that at various places in the extensive record in this case, William Reiley's surname is incorrectly spelled as both "Riley" and "Reily." On the October 10, 1906 survey of the warrants in question, however, his surname is indicated as William Reiley.

[4] Appellees' Exhibit 4, entitled "1837 Board of Viewers Report," is a record of proceedings of the Court of Quarter Sessions of Mifflin County that created Granville Township from Derry Township. This record includes a survey detailing the exact location of the township boundary line and was introduced by appellees at the June 1997 trial.

As noted, Judge Searer entered an order on August 25, 1998, determining that the boundary between the parties' portions of the disputed property was the boundary line between Derry Township and Granville Township depicted in appellees' Exhibit 1. (Trial court order, 8/25/98 at ¶¶ 2-3.) Following argument on appellants' post-trial motions, Judge Searer amended his August 25th order on December 15, 1998, finding that "[t]he border between Granville Township and Derry Township may not be accurately depicted by [appellees'] Exhibit 1" and it "is not to be used to establish the boundary between [the parties'] portions of the disputed land[.]" (Trial court order, 12/15/98 at ¶ 1.) Rather, Judge Searer found that the boundary between the parties' disputed property was the boundary line between Derry Township and Granville Township **as depicted in appellees' Exhibit 4**. (*Id.* at ¶ 2 (emphasis added).)

Appellants contend that the trial court's determination "is unsupported by the evidence when the original Warrants indicated the correct acreage and boundaries." (Appellants' brief at 16.) Appellants argue that "[t]he evidence and the prior deeds indicated the McCormick Warrant was in Derry Township[,]" and the trial court's boundary line essentially "nullified the grant of acreage as surveyed and stated in the Warrant for the McCormick property." (*Id.* at 17.) Appellants further contend that the trial court abused its discretion "by concluding that the Township line as established by the [trial] court constituted the boundary line between the McCormick and

Reiley Warrants." (*Id.*) Appellants also argue that the trial court abused its discretion in failing to "consider the fact that the parties' predecessors in title recognized and consented to the boundary line." (*Id.* at 26.) For the following reasons, we disagree.

Appellants' arguments are premised on their belief that they acquired the warrant initially issued to James McCormick on March 12, 1794 ("the McCormick warrant") from their predecessor in title, Sherrie A. Macknair. Appellants contend "[i]t is the McCormick [w]arrant that was sold at a tax sale [by the Mifflin County Tax Claim Bureau] and acquired by [Robert G. Macknair and Sherrie A. Macknair (collectively, "the Macknairs")] and subsequently conveyed to Doberman." (Appellants' brief at 21.) The record, however, belies this claim.

Preliminarily, we note that the trial court never concluded that the township boundary line "constituted the boundary line between the McCormick and Reiley Warrants." (**See** appellants' brief at 17.) Rather, the trial court merely determined that the boundary between the parties' disputed property was the official boundary line between Derry Township and Granville Township as depicted in appellees' Exhibit 4. (**See** trial court order, 12/15/98 at ¶ 2.)

Here, the record reflects that the land issued via warrant to McCormick in 1794 existed in Derry Township until 1837, when Granville Township was created. (**See** "1837 Board of Viewers Report"; appellees' Exhibit 4.) By

deed dated January 14, 1983 (the "Macknair deed"), the Mifflin County Tax Claim Bureau conveyed the property to appellants' predecessors in title, the Macknairs.  There is no mention of the McCormick warrant in the Macknair deed, and this deed only refers to property located in Derry Township, as follows:

> That land situate on Jacks Mountain, bounded by Granville Township and Brown Township, and by land corresponding to Derry Township Tax Map Numbers 16 -01-119, 16-01-121, 16-01-115, and 16-01-120.
>
> No record of title found.

Deed, 1/14/83, Schedule A; Amended Complaint, 1/13/97 at Exhibit M; certified record at 14.

Following her husband's death, Sherrie A. Macknair conveyed the same premises to appellant Doberman Group, Inc. ("Doberman") by deed dated May 30, 1996 (the "Doberman deed").  The Doberman deed does not reference the McCormick warrant and contains the following description of property situated solely in Derry Township:

> BEING the same premises of which Robert G. Macknair and Sherrie A. Macknair, husband and wife, became seized by deed of the Mifflin County Tax Claim Bureau, dated January 14, 1983, and recorded in the Recorder's Office of Mifflin County, Pennsylvania, in Record Book 268, page 21, and upon the death of Robert G. Macknair on August 2, 1984, complete title vested in Sherrie A. Macknair, by right of survivorship; AND any other land in which Sherrie A. Young, formerly Sherrie A. Macknair has an interest in situate in Derry Township, Mifflin County, Pennsylvania.

Deed, 5/30/96, Schedule A; Amended Complaint, 1/13/97 at Exhibit L; certified record at 14.

Accordingly, it is clear that Sherrie Macknair did not have title to any land located in Granville Township, including the aforementioned McCormick warrant parcel, and could not convey any title to land located in Granville Township to Doberman. Appellee Hawkwing's title, on the contrary, stemmed from the November 4, 1847 conveyance of the McCormick and Reiley warrants to Robert A. Means. (Searer opinion, 8/25/98 at 2, finding of fact no. 8.) Hawkwing ultimately obtained its title to the land situated "partly in Granville Township and partly in Derry Township" by deed dated July 26, 1996. (**See** Deed, 7/26/96 at 1; Amended Complaint, 1/13/97 at Exhibit B; certified record at 14.)

Based on the foregoing, we conclude that the findings of the trial court are supported by competent evidence. Contrary to appellants' contention, Doberman never acquired the land specified in the McCormick warrant. Accordingly, we discern no abuse of the trial court's discretion in determining that the boundary line between Derry Township and Granville Township as depicted in appellees' Exhibit 4 constituted the boundary between the parties' property.

Appellants' next two claims concern Judge Kurtz's award of damages to appellees for the removal of timber from their property. Appellants first argue that the trial court abused its discretion by awarding appellees double

the amount of damages under the "Timber Trespass" law, 42 Pa.C.S.A. § 8311, based upon a finding of negligence.  (Appellants' brief at 29.) Appellants maintain that the evidence presented at trial "established that Doberman had a reasonable basis for believing that the land on which the timber was harvested was its land[,]" and thus, the finding of negligence cannot stand.  (*Id.* at 29-30.)  We disagree.

Section 8311, **Damages in actions for conversion of timber**, provides as follows:

> **(a)** **General rule.--**In lieu of all other damages or civil remedies provided by law, a person who cuts or removes the timber of another person without the consent of that person shall be liable to that person in a civil action for an amount of damages equal to:
>
> (1) the usual and customary costs of establishing the value of the timber cut or removed and of complying with the erosion and sedimentation control regulations contained in 25 Pa. Code Ch. 102 (relating to erosion control);
>
> (1.1) the cost of any surveys obtained in connection with the civil action; and
>
> (2) one of the following:
>
> > (i) three times the market value of the timber cut or removed if the act is determined to have been deliberate;
> >
> > **(ii)** **two times the market value of the timber cut or**

> **removed if the act is determined to have been negligent**; or
>
> (iii) the market value of the timber cut or removed if the defendant is determined to have had a reasonable basis for believing that the land on which the act was committed was his or that of the person in whose service or by whose direction the act was done.

42 Pa.C.S.A. § 8311(a) (emphasis added).

Instantly, Judge Kurtz determined that the double damages clause set forth in Section 8311(a)(2)(ii) applied in this case and awarded appellees two times the market value of the timber cut, totaling $242,326.00. In support of this conclusion, Judge Kurtz reasoned as follows:

> The question then is whether or not [appellees] are entitled to enhanced damages. In this case we are persuaded that [appellants] acted negligently in cutting the trees when they had been placed on notice that title to the property where they were cutting was in dispute. In this regard there is no argument that on July 31, 1996, [appellees'] attorney wrote to [appellants'] attorney and gave him notice of the fact of [appellees'] claim of ownership to the land. To continue cutting in our view was therefore negligent . . . .

Kurtz opinion, 9/8/15 at 12.

Upon review of the evidence in the light most favorable to appellees, we conclude that the trial court's finding of negligence is clearly supported by the evidence of record. **See Yanoviak**, 945 A.2d at 224. The record

reveals that appellant Walter Dobozynski ("Dobozynski") acknowledged that Doberman received a letter from appellees dated July 31, 1996, that warned appellants not to cut timber on the disputed property, but evidently elected to disregard this warning. (*See* notes of testimony, 10/7/14 at 95.) Dobozynski testified that he based his decision to remove timber from the disputed property on his belief that the January 14, 1983 deed between the Mifflin County Tax Claim Bureau and Doberman's predecessors in title, the Macknairs, was for 1100 acres. (*Id.* at 92; notes of testimony, 6/16-17/97 at 160-161.) The record, however, reflects that appellants failed to ensure that a survey of the land they acquired by deed was fully completed prior to removal of the timber. (*Id.*) Additionally, our review of the property description in both the Macknair deed and the Doberman deed reveals that they only reference land located in Derry Township. (*See* Deed, 1/14/83, Schedule A and Deed, 5/30/96, Schedule A; Amended Complaint, 1/13/97 at Exhibits L, M; certified record at 14.) Lastly, we note that Dobozynski testified that he was concerned after Doberman encountered a yellow line "blazing" the trees on the disputed property, but appellants nonetheless elected to continue cutting timber after their attorney informed them to "[k]eep going unless someone can stop you." (Notes of testimony, 10/7/14 at 102.)

Based on the foregoing, we discern no abuse of the trial court's discretion in concluding that appellants' removal of the timber from the

property in question was negligent. Accordingly, the trial court's award of $242,326 in damages to appellees pursuant to Section 8311(a)(2)(ii) was entirely warranted.

We now turn to appellants' claim that the trial court abused its discretion "in calculating the underlying amount of damages for the harvested timber." (Appellants' brief at 41.) In support of this contention, appellants take issue with the fact that the trial court found that expert witness James M. Cowan ("Cowan") utilized a more accurate methodology for estimating the value of the harvested timber than that of appellants' expert witness, Robert S. Bingman ("Bingman"). (*Id.* at 42-51; **see also** trial court opinion, 9/8/15 at 4.)

We note that,

> [t]he [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence.

*Yanoviak*, 945 A.2d at 225 (citations and internal quotation marks omitted). Market value is defined under Section 8311 as "[t]he value of the standing timber at local market prices for the species and quality of timber cut or removed at the time it was cut or removed." 42 Pa.C.S.A. § 8311(c).

Here, our review of the record reveals that Bingman estimated that the total value of the timber harvested by appellants in 1996 was $43,482. (Kurtz opinion, 9/8/15 at 5, finding of fact no. 11.) Cowan, in turn,

estimated that the total value of the harvested timber was $121,163.  (*Id.* at 6, finding of fact no. 16.)  Appellants do not contend that Cowan was unqualified to offer expert testimony as to the fair market value of the timber in question.  Rather, appellants claim that Bingman utilized "the most reliable and accurate method to count and value trees" and the trial court should have credited his testimony over that of Cowan.  (Appellants' brief at 14, 41-50.)

This court has long recognized that in a bench trial, matters of credibility are within the province of the trial court, and its findings will not be disturbed if they are supported by competent evidence in the record.  *See Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 413-414 (Pa.Super. 2004), *appeal dismissed as improvidently granted*, 903 A.2d 1185 (Pa. 2006) (citation omitted).  Instantly, Judge Kurtz found that both parties "called a qualified consulting forester to testify to the volume and value of the timber harvested in 1996 by [appellants]" and that "both experts were credible[.]" (Kurtz opinion, 9/8/15 at 3-4, findings of fact nos. 1, 2.)  Judge Kurtz further concluded that both Bingman and Cowan utilized a methodology "recognized and used in the industry[,]" but that Cowan's expert opinion was the more accurate of the two.  (*Id.* at 8.)  Judge Kurtz set forth the following four reasons in support of this conclusion:

> First, Mr. Cowan's work was done in 1997 and 2000 as opposed to 2014.  The fact that Mr. Cowan's cruise of the timber was in close proximity to the time of the cut gave him the advantage of being able

- 15 -

to differentiate the various types of oaks and to determine the size of the trees cut since for the most part the tops were still there.

Next, Mr. Cowan had far more experience in timber sales in Mifflin County at the time of the cut. Thus, he testified that he had sold timber on both sides of the property as well as for several property owners who owned below the property. He also said he'd sold all the timber on the other side of the mountain. It was clear that he had an intimate knowledge of the area where the timber was cut and could better appraise its value in 1997 and 2000 because of this knowledge.

Third, Mr. Cowan was not employed by [appellees] but rather by Brumbaugh Lumber Company, the Intervenor, who had sued [appellees].

Finally, we could not help but consider the fact that [appellants] know precisely the volume of the timber cut in 1996 and the price they obtained for it but elected to not introduce that evidence at trial.

*Id.* at 8-9 (citation to notes of testimony omitted). Judge Kurtz further noted that, "Bingman acknowledged that a significant difficulty he faced was the fact that eighteen (18) years had elapsed and the stumps had deteriorated to the point where he could not differentiate the different types of oak trees." (*Id.* at 5, finding of fact no. 7.) Additionally, Bingman "testified that the fact that the trees were removed made estimating board feet problematic." (*Id.* at 5, finding of fact no. 9.)

The record reflects that the trial court considered the testimony of both experts. The trial court clearly articulated its reasons for accepting Cowan's testimony and methodology for valuing the timber in question over

that of Bingman. We will not disturb the credibility determinations of the trial court sitting as the finder-of-fact. **See Yanoviak**, 945 A.2d at 225; **Hollock**, 842 A.2d at 413. Accordingly, appellant's abuse of discretion claim must fail.

Lastly, appellants argue that "the trial court erred as a matter of law by failing to join indispensable parties whose property lines were changed by the decision when the decision impaired the rights of those persons and entities." (Appellants' brief at 51.)

We have summarized our standard of review with respect to indispensable parties as follows:

> Under Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised **sua sponte**. . . . Whether a court has subject matter jurisdiction presents a question of law, making our standard of review **de novo** and the scope of our review plenary.

**Orman v. Mortg. I.T.**, 118 A.3d 403, 406 (Pa.Super. 2015) (citations and internal quotation marks omitted).

As noted, the trial court concluded that the boundary between the parties' disputed property was the official boundary line between Derry Township and Granville Township as depicted in appellees' Exhibit 4. (**See** trial court order, 12/15/98 at ¶ 2.) Doberman received a deed for land located only in Derry Township, with Granville Township as its boundary.

Contrary to appellants' contention, the trial court's determination did not "change" or redraw any parties' property line. Accordingly, appellants' final claim is without merit.

Having determined that the trial court's findings are supported by competent evidence and that appellants have failed to demonstrate that the trial court committed error in application of the law, we affirm the judgment entered in favor of appellees.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2017