J-S46039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TOTAL HOME CARE AND INSPECTION, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL A. CARLEVALE T/A C&Z CONSTRUCTION | : | No. 1292 MDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment Entered October 21, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s):  2011-CV-11730

| | | |
|---|---|---|
| TOTAL HOME CARE AND INSPECTION, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1358 MDA 2016 |
| PAUL A. CARLEVALE T/A C&Z CONSTRUCTION | : | |

Appeal from the Judgment Entered October 21, 2016
In the Court of Common Pleas of Dauphin County
Civil Division at No(s):  2011-CV-11730

BEFORE:    BOWES, OLSON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED JULY 25, 2017**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant/Cross-Appellee, Paul A. Carlevale t/a C&Z Construction (Carlevale) appeals, after a bench trial, from the Judgment entered in the Court of Common Pleas of Dauphin County on October 21, 2016, following the trial court's Order of July 21, 2016, awarding damages to Appellee/Cross-Appellant, Total Home Care and Inspection, Inc. ("Total Home Care"), in the amount of $33,458.29, with interest accruing at a rate of 6% until paid. Total Home Care cross-appeals from the entry of the Judgment.[1] Following our review, we affirm in part, reverse in part and remand for further proceedings.

The trial court set forth the facts herein as follows:

**FACTS**

This case involved claims by Total Home Care for unpaid construction and remodeling services performed as a

---

[1]Carlevale filed his notice of Appeal on August 8, 2016, and Total Home Care filed its Notice of Cross Appeal on August 18, 2016. Although the parties purported to appeal from the trial court's Order dated July 21, 2016, and entered on July 26, 2016, in a *Per Curiam* Order entered on October 19, 2016, this Court indicated that final judgment had not been entered on the trial court docket as required by Pa.R.A.P. 301, (citing **Prime Medica Assoc. v. Valley Forge Ins. Co.**, 970 A.2d 1149 (Pa.Super. 2009), *appeal denied,* 989 A.2d 918 (Pa. 2010) (stating order denying post-trial motions is interlocutory and not appealable until entry of final judgment)). We directed Total Home Care or Carlevale to praecipe the Prothonotary of the trial court to enter final judgment and file with the Prothonotary of this Court, within ten days, a certified copy of the trial court docket reflecting the entry of judgment. We further indicated that upon compliance with Pa.R.A.P. 301, the notice of appeal previously filed would be treated as filed after the entry of judgment. Final Judgment was entered on October 21, 2016, and the appeal paragraph reflects the appeal and cross-appeal are from that Judgment.

subcontractor for Carelevale [sic] at about six different properties. The subject of Total Home Care's direct claims was the work performed as following:

a) Oasis Club - claimed balance due of $60,190.24

b) Roberts Valley Road - claimed balance due of $5,709.24

c) 1239 Market Street - claimed balance due of $3,420.37

d) 2526 North 6th Street - claimed balance due of $1,795.00

e) 1829 Bellevue Road - claimed balance due of $1,354.11

f) 3626 Derry Street - claimed balance due of $161.20

Total Home Care also sought interest at 18% pursuant to the alleged past practices of the parties.

In response to the Complaint for the unpaid services, Carlevale filed a counterclaim seeking damages for alleged defective work performed by Total Home Care. The subject of Carelevale's [sic] counterclaim was the following:

a) Fureman home - claimed balance due of $2,500.00

b) Ramsey home - claimed balance due of $500.00

c) Taylor home - claimed balance due of $620.00

d) Mitchell home - claimed balance due of $600.00

e) Starnes home - claimed balance due of $1,360.00

f) 1775 Horseshoe Pike - claimed balance due of approximately $24,000.00.

On July 21, 2016, following a non-jury trial, this [c]ourt entered a verdict in favor of Total Home Care in the amount of $33,458.29, interest accruing at 6% annually. With respect to the Oasis Club job, we found there were two separate contracts - one to do the HVAC work, totaling $30,800, and another to do the rough plumbing work. Evidence was produced at trial showing a down payment of $15,400 made from [Carlevale] to [Total Home Care] for the HVAC work, leaving $15,400 still owed. See Plaintiff's Exhibits 3 and 4. Further, Stephen Borne, owner of Total Home Care, testified the HVAC work on the Oasis Club job was "90-95[%]" complete. N.T. Trial, 7/21/16, at 26. As for the plumbing work, the final invoice which [Total Home Care] gave to [Carlevale] showed $9,395.00 was owed for work done prior to [Total Home Care] being locked out, *See* Plaintiff's Exhibit 5. We also heard testimony indicating [Carlevale] never took issue with the quality of the plumbing work done by [Total Home Care]. *See* N.T. Trial, 7/21/16, at 33. Thus, this [c]ourt found $24,795.00 was owed for the Oasis Club job - $15,400 on the HVAC contract and $9,395.00 on the plumbing contract.

The Roberts Valley Road job required [Total Home Care] to install a new HVAC system on an addition to a residential home.

[Total Home Care's] documents indicated the estimate for this job was $9,400. *See* Plaintiff's Exhibit 6. However, evidence presented at trial showed a partial payment was made in the amount of $7,000, leaving a $2,400 balance due. *See* Plaintiff's Exhibit 7; N.T. Trial, 7/21/16, at 39-40. Thus, this [c]ourt found for [Total Home Care] in the amount of $2,400.00

The 1239 Market Street job called for [Total Home Care] to do the rough plumbing work on the second and third floors of what was to be the Rebound Bar. [Total Home Care] presented two documents - one an invoice for the work done on the second floor, the other an invoice for work done on the third floor. *See* Plaintiff's Exhibits 8 & 9. The invoice for the second floor, Plaintiff's Exhibit 8, showed a balance due of 1,514.76; the invoice for the third floor, Plaintiff's Exhibit 9, was paid in full. Further, Mr. Borne testified he never received any complaints about the work performed on the Market Street job. Thus, this [c]ourt found in favor of [Total Home Care] in the amount of 1,514.76.

The 2526 North 6th Street job required [Total Home Care] to do the rough plumbing work on a new bathroom. [Total Home Care] presented an invoice for this job showing both partial payment made by [Carlevale] as well as the outstanding balance due-$653.52. *See* Plaintiff's Exhibit 10. Further, Mr. Borne testified that he received no complaints about the quality of the work done. Thus, this [c]ourt found for [Total Home Care] in the amount of $653.52.

Next, the 1829 Bellevue Road job required [Total Home Care] to do a "very simple" plumbing job, costs totaling $588. *See* N.T. Trial, 7/21/16, at 52-53. Despite completing the work, [Carlevale] made no payment to [Total Home Care] for this job and the entire balance remained outstanding. Mr. Borne testified he never received any complaints about the work from [Carlevale]. *Id*., at 53. Accordingly, this [c]ourt found for [Total Home Care] on this project in the amount of $588.

Lastly, the 3626 Derry Street job related to a service call made by [Total Home Care], at [Carlevale's] request, due to lack of heat. The only work performed at this property by [Total Home Care] was re–lighting the pilot light. Despite [Carlevale's] contention that there was an "understanding" this work would be performed for free, [Total Home Care] sent [Carlevale] an invoice totaling $70. *See* Plaintiff's Exhibit 12. The full amount of this invoice remained unpaid. Thus, this [c]ourt found for [Total Home Care] on this project in the amount of $70.

In reaching its final determination, it was the [c]ourt's understanding that [Total Home Care] was not being paid for any of the above-mentioned projects due to the hold up at the Oasis Club. In declining to accept [Carlevale's] counterclaims, we found [Carlevale] had "failed to produce sufficient evidence on any of the counterclaims with respect to the various properties of [the] homeowners. [Specifically,] there's been no expert testimony that the work was defective, which is required." *See* N.T. Verdict., 7/21/2016, at 2-3. Each party filed motions for reconsideration, which were denied.

Trial Court Opinion, filed 1/11/17, at 1-4.

On November 1, 2016, this Court *sua sponte* consolidated the appeal filed in No. 1292 MDA 2016 and the cross-appeal filed at No. 1358 MDA 2016. The parties and the trial court have complied with Pa.R.A.P. 1925.

In his appellate brief, Carlevale presents the following Statement of Questions Involved:

I. Did the Honorable Trial Court err when it implicitly determined that [Total Home Care] met the required burden of proof to establish the existence of a time and material contract, particularly when [Total Home Care] failed to introduce any evidence of the "time" aspect of the purported contracts, and awarded [Total Home Care] $33,458.20?

II. Did the Honorable Trial Court err in the failure to grant [Carlevale's] motion for directed verdict and non-suit in favor of [Carlevale] as [Total Home Care] failed to meet his burden of proof?

III. Did the Honorable Trial Court err in its calculation of damages?

IV. Did the Honorable Trial Court err in failing to issue a bench warrant compelling the testimony of Gary Dobrinoff?

Brief for Carlevale at 4 (boldface type omitted).

When considering the issues Carlevale has raised, we employ a well-settled scope and standard of review:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Baney v. Eoute*, 784 A.2d 132, 135 (Pa.Super. 2001) (citations omitted).

This appeal concerns the interpretation and application of numerous purported contracts between the parties. The interpretation of a contract poses a question of law, and our scope of review is plenary. *Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa.Super. 2000). As this Court reiterated in *Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1046 (Pa.Super. 2015), the fundamental rule in interpreting a contract's meaning is to ascertain and give effect to the contracting parties' intent and the parties' intent in an agreement is to be regarded as being embodied in the writing itself.

The record herein reveals the parties' agreements were both orally based and confirmed in writing in the form of estimates, quotations and/or invoices. In finding no merit to Carlevale's first issue, the trial court explained that after listening to the testimony pertaining to the agreements

at issue and considering the documentary evidence submitted at trial, it determined Total Health Care had produced sufficient evidence to establish the existence of "the time and materials contracts." Trial Court Opinion, filed 1/11/17, at 6. Notwithstanding, we find Carlevale waived this issue for appellate review.

Pennsylvania Rule of Appellate Procedure 1925 provides that a concise statement of matters complained of on appeal "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). It is well-settled that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived." Pa.R.A.P. 1925(b)(4)(vii); **Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa.Super. 2006). Therefore, a concise statement on appeal must be specific enough for the trial court to identify and address the issue or issues that the appellant wishes to raise on appeal. ***In re A.B.***, 63 A.3d 345, 350 (Pa.Super. 2013).

This Court has considered the question of what constitutes a sufficient Rule 1925(b) statement on many occasions and stated an appellant's concise statement must be specific enough for the trial court to identify and address the issue or issues an appellant wishes to raise on appeal. ***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011). Further, this Court may find

waiver where a concise statement is too vague. *Id.* When a trial court has to guess what issues the appellant wishes to appeal, the concise statement is too vague for meaningful review. "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686-87(Pa.Super. 2001).

With respect to issues not included in a concise statement, our Supreme Court has instructed that this Court has no discretion in choosing whether to find waiver. Waiver is mandatory, and this Court may not craft *ad hoc* exceptions or engage in selective enforcement. *City of Philadelphia v. Lerner*, ___ Pa. ____, 151 A.3d 1020, 1024 (2016) (quoting *Commonwealth v. Hill*, 609 Pa. 410, 426, 16 A.3d 484, 494 (2011).

In his Concise Statement of Matters Complained of on Appeal, Carlevale averred:

> A.    The Honorable Trial Court erred when it awarded [Total Home Care] $33,458.20 based upon [Total Home Care's] claims of a breach of time and material *contracts* with [Carlevale].
> B.    The Honorable Trial Court erred when it implicitly determined that [Total Home Care] met the required burden of proof to establish the existence of each of the time and material *contracts* contained in [Total Home Care's] complaint.
> C.    The Honorable Trial Court erred when it implicitly determined that [Total Home Care] had met the required burden of proof to establish the existence of a time and material *contract*  when [Total Home Care] failed to introduce any evidence of the "time" aspect of the purported *contracts* which were attached to [Total Home Care's] complaint.

Concise Statement of Matters Complained of on Appeal, filed 9/1/16, at ¶¶ A-C. (emphasis added).

Despite the fact that the two-day, non-jury trial concerned construction and remodeling services Total Home Care had performed for Carlevale as a subcontractor at numerous locations, Carlevale failed to assert a specific challenge in his Rule 1925(b) statement to the "time" element with regard to any of the projects about which the trial court heard evidence. In fact, Carlevale at the same time refers to both the singular "contract" and the plural "contracts" in his statement and challenges in boilerplate fashion the "time" and/or "material" aspects thereof. Because Carlevale failed to specify how the "time" and/or "material" aspect of any particular project was lacking, we find this issue to be waived. ***See Dowling***, ***supra***.

In addition, Carlevale devotes just over a page of text to this argument wherein he only generally states that Total Home Care failed to establish with tangible evidence the "existence of the essential elements of the time and material contract with [Carlevale]… specifically the time portion." Brief for Appellant at 11. Carlevale ignores the testimonial evidence to the contrary and posits Total Home Care's failure to list or provide any time records or to secure any signed estimates or agreements made it impossible for the trial court properly to assess damages. Brief for Carlevale at 12. Yet, nowhere in his argument did Carlevale cite to specific

"time" provisions of any of the parties' agreements which had not been established, nor did he clarify which project in any was unsupported by sufficient evidence. Moreover, he provides no citation to relevant authority pertaining to this specific issue.

> [W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court ...] to formulate [a]ppellant's arguments for him. Moreover, because the burden rests with the appealing party to develop the argument sufficiently, an appellee's failure to advocate for waiver is of no moment.

*Wirth v. Commonwealth*, 626 Pa. 124, 149-150, 95 A.3d 822, 837 (2014) (quotation marks and citations omitted).  As such, Carlevale has waived this issue for lack of development in his appellate brief as well.[2]

Carlevale next contends the trial court erred in failing to grant his motions for a nonsuit and a directed verdict.  A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence.

*Harnish v. School District of Philadelphia*, 557 Pa. 160, 163, 732 A.2d

---

[2] In his reply brief, Carlevale reasserts his general allegations and supports them with decisions of the court of common pleas and several cases from the third circuit; however, this Court is not bound by cases decided by a court of common pleas, even if those decisions are directly on point. *Goddard v. Heintzelman*, 875 A.2d 1119, 1121 (Pa.Super. 2005) (holding this Court is not bound by decisions of the court of common pleas and is free to reach contrary holdings).  In addition, we are not bound by the decisions of federal intermediate appellate court panels. *Cianfrani v. Johns-Manville Corp.*, 482 A.2d 1049, 1051 (Pa.Super. 1984).

596, 598 (1999). A trial court may enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. Pa.R.C.P. No. 230.1 (a), (c): *see also **Biddle v. Johnsonbaugh***, 664 A.2d 159 (Pa.Super. 1995); ***Orner v. Mallick***, 639 A.2d 491, 492 (Pa.Super. 1994). A sufficiency of the evidence claim also may be raised through a motion for a directed verdict. ***Lear, Inc. v. Eddy***, 749 A.2d 971 (Pa.Super. 2000).

After Total Home Care rested, Carlevale brought a motion for a "directed verdict on some of these claims." N.T. Trial, 7/14/16, at 113. Specifically, counsel asserted:

> I guess I'll make the motion for directed verdict on some of these claims, Your Honor. Again, they're contract claims. We've heard no testimony, again, and Plaintiff we feel has failed to meet their burden of proof on the first Oasis Club claim of 9395; failed to meet their burden on the Rebound Bar, again a time-and-material job; as well as Hairston, Smith, and those claims. We ask that you give a directed verdict because Plaintiff has not met his burden.

N.T. Trial, 7/14/16, at 113. The trial court denied the motion, and the proceedings continued. ***Id***.

The trial court stated in its Rule 1925(a) Opinion it denied Carlevale's motions for both directed verdict and nonsuit. Trial Court Opinion, filed 1/11/17, at 6; however, while Carlevale argued during closing arguments that Total Home Care had presented insufficient evidence to prove its claims, our review of the record reveals Carlevale did not challenge the sufficiency of

- 11 -

the evidence Total Home Care presented regarding its burden of proof either orally or by written motion for a directed verdict at the close of evidence. Indeed, Carlevale points to nowhere in the record or in the notes of trial testimony where such motion had been raised.

> [I]f an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. Pa.R.A.P. 2119(e). **Commonwealth v. Baker**, 963 A.2d 495, 502 n. 5 (Pa.Super.2008), *appeal denied,* 606 Pa. 644, 992 A.2d 885 (2010). Further, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Id**. at 502 n. 6 (citations omitted).

**Phillips v. Lock**, 86 A.3d 906, 920–21 (Pa.Super. 2014). As it appears Carlevale did not present a motion for a nonsuit or a motion for a directed verdict to the trial court at the close of evidence, he has not preserved for appellate review his claim the trial court erred in denying the same. **Id**.

Moreover, Carlevale's argument at trial pertained to Total Home Care's alleged failure to establish the existence of contracts on the enumerated jobs, while on appeal he posits the evidence to establish the "time" element thereof, as well as with regard to projects he failed to enumerate at the time he presented the oral motion for "directed verdict," was lacking.[3] As such,

_____

[3] While at trial Carlevale mentioned only "the first Oasis Club," the "Rebound Bar," "Hairston" and "Smith," in his appellate brief, he discusses why the trial court erred in failing to grant his motions for "directed verdict and non-
*(Footnote Continued Next Page)*

we find Carlevale has waived his right to raise this issue on appeal for this reason as well. ***See Commonwealth v. Hanford***, 937 A.2d 1094, 1098 n.3 (Pa.Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008) (new legal theories cannot be raised for first time on appeal); Pa.R.A.P. 302(a).

To the extent Carlevale may be deemed to have preserved a claim that Total Home Care failed to present sufficient evidence as to the time it spent on the Oasis Club, Rebound Bar, Hairston and Smith projects, this Court has long recognized that in a bench trial, matters of credibility are within the province of the trial court and its findings will not be disturbed if those findings are supported by competent evidence in the record. ***See Hollock v. Erie Ins. Exch.***, 842 A.2d 409, 413–14 (Pa.Super. 2004), *appeal dismissed as improvidently granted*, 903 A.2d 1185 (Pa. 2006) (citation omitted). The trial court's findings are especially binding on appeal where they are based upon the witnesses' credibility, unless it appears that the trial court abused its discretion, that its findings lack evidentiary support or that the court capriciously disbelieved the evidence. ***Christian v. Yanoviak***, 945 A.2d 220, 225 (Pa.Super. 2008).

The trial court questioned Steven Borne, the owner of Total Home Care, as to the manner in which Total Home Care kept time sheets. Mr.

*(Footnote Continued)* _____

suit" in connection with the "Oasis Club Project," "Peterson-Roberts Valley Road," "Rebound Bar-1239 Market Street," "Ethel Hairston- 2526 North 6th Street," and "Burnell Smith-1829 Bellevue Road." Brief for Carlevale at 13-19.

Borne explained that when a crew was sent to a work site, its members filled out a daily, preprinted time sheet indicating the number of hours worked. N.T. Trial, 7/14/16, at 66-67. These sheets were then utilized to generate paychecks for the employees after which they were placed in a time-sheet file. *Id*. at 69. Mr. Borne indicated he had retained time sheets dating back to 2006 or 2007. *Id*.

When Carlevale questioned why Total Home Care had not produced those time sheets, counsel for Total Home Care objected and explained that the documentation was made available to Carlevale, although the latter chose not to review it. *Id*. at 70-71. Counsel for Carlevale first claimed he could not remember his client having been given an opportunity to review the time sheets. Counsel later admitted that "maybe" he had and retorted that as Total Home Care bore the burden of proof, Carlevale did not need to do so. *Id*. at 71-72. In response, counsel for Total Home Care read into the record an email sent to counsel for Carlevale on February 10th [4] in response to a discovery request which read as follows:

> With regard to the request for employee time records, my client tells me that they would fill a file drawer and are quite voluminous. I have not seen them but I'm told they can be made available to you to be viewed at my office at your convenience. Let me know how you want to handle that. Thank you. John.

*Id*. at 72.

---

[4] Presumably, the year was 2016.

- 14 -

The record reflects the trial court considered Mr. Borne's testimony that detailed time sheets were kept and offered to Carelvale, although he chose not to review them, along with the testimony of various defense witnesses and exhibits of the parties pertaining to the duration of each project, all of which this Court has reviewed and which the trial court found to be credible. The trial court clearly articulated its reasons for finding the evidence to support Total Home Care's claims, and we will not disturb the credibility determinations of the trial court sitting as the finder-of-fact. **See** **Yanoviak**, **supra**, 945 A.2d at 225; **Hollock**, **supra**, 842 A.2d at 413. Accordingly, Carlevale is not entitled to relief on this issue.

Carlevale next avers the trial court erred in its calculation of damages.

> The duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. To support the granting of a new trial for inadequacy, the injustice of the verdict should stand forth like a beacon. So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury.

**Epstein v. Saul Ewing, LLP**, 7 A.3d 303, 315 (Pa.Super. 2010) (citation omitted).

In his appellate brief, Carlevale disputes only the largest portion of the overall damage award which pertained to the Oasis Club HVAC project; therefore, he has waived a challenge to any remaining amount of the

- 15 -

damage award for lack of development. *See Wirth*, *supra*. When disputing the Oasis-HVAC damage award, Carlevale maintains the project was not a "time and material" one and that the initial contract price was $30,800.00. Carlevale posits Total Home Care unjustifiably added $8,100.00 to the initial amount and that when calculating damages the trial court should have deducted that sum from the invoice, credited Carlevale for a $15,400.00 payment and credited Carlevale for an additional $15,000.00 for Total Home Care's incomplete work leaving a balance of $400.00. Carlevale contends the trial court's findings to the contrary are based solely upon the testimony of Mr. Borne which was contradicted by documentary evidence in the form of invoices generated by Mr. Borne himself. Brief for Appellant at 21-22.

The trial court provided the following explanation for its calculation of damages:

> As mentioned, the [c]ourt awarded Total Home Care damages on the HVAC contract in the amount of $8,100. The initial contract price for the HVAC work was $30,800. Contrary to Carlevale's contention, the [c]ourt did credit Carlevale with the half-down deposit, which reduced the balance due to $15,400. After the down payment was made, but before the work was completed, Total Home Care had been informed that Carlevale was no longer working there, and Total Home Care was locked out of the Oasis Club due to an insurance dispute with the property owner; thus unable to finish the job. According to Stephen Borne, the Owner of Total Home Care, the HVAC work was "90-95% complete." N.T. Trial, 7/21/16, at 85-86. Following the lock-out, in an attempt to recoup time and materials costs, Total Home Care negotiated a reduced payment with Carlevale. Rather than the $15,400 that remained outstanding, Total Home Care agreed to accept $8,100, which represented their time and materials costs. The [c]ourt found unpersuasive Carlevale's argument that a $15,000 credit had

been given, and the balance due should be $400. *See* N.T. Trial, 7/21/16, at 80-85. Thus, the [c]ourt awarded Total Home Care damages for the unpaid HVAV work in the amount of $8,100, the reduced payment agreed upon by the parties. The [c]ourt reasoned "The verdict could have been higher… but [the [c]ourt gave] Carlevale every benefit of the doubt that [it could] and us[ed] the $8,100 figure[.]" N.T. Verdict, 7/21/16, at 2.

Trial Court Opinion, filed 1/11/17, at 6-7.

Upon review of the evidence in a light most favorable to Total Home Care, we find the trial court's award of principal damages is supported by the record evidence.[5] A review of the invoices pertaining to the Oasis Club project reflects the initial price for labor and materials for the HVAC aspect thereof was $30,800.00, and a deposit for half that amount was paid at the outset of the contract. **See** Defense Exhibit # 8 at 1. Mr. Borne testified that in an effort to receive some remuneration for the unpaid balance, Total Home Care provided Carlevale, upon his request, with its "absolute flat cost on the job, what [Total Home Care] had actually in materials and man hours at cost." N.T. Trial, 7/14/16, at 83. As a result of these negotiations, Mr. Borne explained, "[t]he 15,000 credit was against the top thirty eight," and the balance of $8,100.00 constituted the amount Mr. Borne provided Carlevale in an effort to get paid, despite a typographical error on the invoice which listed a "credit" in the amount of $15,000. **Id**. at 84-85. Thus,

---

[5] Notwithstanding, as we shall discuss, *infra*, we find the trial court erred in awarding interest at the statutory, as opposed to the contractual, rate.

the trial court's decision to reduce the Oasis Club HVAC damages is supported by sufficient evidence.[6] No relief is due.

Finally, Carlevale maintains the trial court erred in failing to issue a bench warrant for the appearance of Gary Dobrinoff, the owner of the Oasis Club. At trial, counsel for Carelvale asserted the following:

> Your Honor, we'd like to put on the record again one more request for a bench warrant to be issued for the appearance of Gary Dobrinoff. Mr. Dobrinoff was served with a copy of the subpoena. He was actually served with a check. Your Honor asked if I knew if he had gotten it, in a conference, and we have a copy of the cashed check that Mr. Dobrinoff received which went into account payable to his name. So we wanted to make a request on the record, Your Honor.
> Mr. Dobrinoff is the only non-biased witness here that will say anything about the Oasis Club. You've heard testimony by both [Total Home Care] and [Carlevale]. This is the property owner. And I believe the property owner would say to us that the work—the completion level of the work is different than what you've heard so far.

N.T. Trial, 7/21/16, at 289. Argument from both parties ensued, at which time Carlevale's counsel speculated at to what the substance of Mr. Dobrinoff's testimony would be. *Id*. at 296-300. At the conclusion of argument, the trial court chided counsel for failing to take Mr. Dobrinoff's deposition and denied his request for a bench warrant upon noting it was not convinced Mr. Dobrinoff would have "anything to add." *Id*. at 301.

_____

[6] While it disagrees with the trial court's decision to reduce the amount, Total Home Care concedes sufficient evidence had been presented for the trial court to do so. Brief for Appellee at 19 n. 7.

In the three-paragraph argument Carlevale devotes to this claim in his appellate brief, he surmises that because witnesses for each party testified in a manner to advance that party's position and Mr. Dobrinoff would have supplied the only "neutral" "non-biased, first-hand account of actual scope of the completion of the Oasis-HVAC project," the trial court abused its discretion in finding he would have added nothing to the proceedings and in failing to compel his testimony. Brief for Carlevale at 22-23. Carlevale further represents that although he failed to appear at trial, Mr. Dobrinoff properly had been served with a subpoena and a witness fee check which had been cashed. *Id*. at 23.

Our standard of review with regard to evidentiary issues at trial is well-settled.

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Phillips, supra,* 86 A.3d at 920 (citation omitted).

Pennsylvania Rule of Evidence 701 describes the parameters of lay witnesses testimony as follows:

**Rule 701. Opinion Testimony by Lay Witnesses**

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Carlevale's above assertions are premised upon his representation that he served a subpoena upon Mr. Dobrinoff and that a witness fee check had been cashed. However, Carlevale has provided this Court with no proof thereof in the form of a copy of the subpoena or cancelled check as exhibits to his initial appellate brief or his reply brief, nor has he pointed to a place in the certified record where we may locate the same. *See **Phillips**, **supra***. In addition, he also has failed to include the return of service required by Pennsylvania Rule of Civil Procedure 405:

> (a) When service of original process has been made the sheriff or other person making service shall make a return of service forthwith....
> (b) A return of service shall set forth the date, time, place and manner of service, the identity of the person served and any other facts necessary for the court to determine whether proper service has been made.
> (c) Proof of service by mail under Rule 403 shall include a return receipt signed by the [recipient] [or proof that the recipient refused to accept service], ...
> (d) A return of service by a person other than the sheriff shall be by affidavit....
> (e) The return of service or of no service shall be filed with the prothonotary.
> …

Pa.R.C.P. 405.

There is no indication in the certified record or docket entries that a subpoena was served properly on Mr. Dobrinoff, and the trial court's authority to issue a bench warrant was not triggered unless and until proof of service of the subpoena was demonstrated. To the contrary, by counsel's own admission, Mr. Dobrinoff was "served with a check." Accordingly, we must reject this claim. *See Kovalev v. Sowell*, 839 A.2d 359, 367 (Pa.Super. 2003).[7]

We next address Total Home Care's cross-appeal which raises the following "Counter-Statements of the Questions Involved":

I. Did [Total Home Care] meet its burden of proof and introduce sufficient evidence to substantiate the court's award on the principal contracts of $33,458.20?

II. Was the trial court required to issue a bench warrant to a minor witness who would have added nothing to the claim to compel his testimony concerning a minor issue?

III. Did the court err in reducing the original contract claims and by refusing to award interest at the contract rate of 18 percent per annum?

Brief for Total Home Care at 4 (unnecessary capitalization omitted). As our disposition above has rendered moot a consideration of Total Home Care's

---

[7] Even if Carlevale had offered proof in this regard, we would find the trial court did not abuse its discretion in finding Mr. Dobrinoff's speculative testimony concerning the agreement between Total Home Care and Carlevale pertaining to a project that had begun eight years prior to trial was not relevant in light of the previously admitted evidence. There was ample evidence on the record to support the trial court's credibility determinations and fact finding in favor of Total Home Care on this breach of contract claim.

first two claims, we need decide only its last.  The issue of whether the parties had entered into a contractual relationship was resolved in the pleadings.  *See* Answer and Counterclaim to Plaintiff's Complaint, filed 2/1/12, at ¶¶ 3-5.  Our Supreme Court has stressed:

> it is a well-established principle of contract law that, where the language of a contract is clear and unambiguous, a trial court is required to give effect to that language. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). Indeed, this Court has cautioned that it is not the function of a court to rewrite agreements between parties, and a court must give effect to the clear terms to which the parties have agreed. *Amoco Oil Co. v. Snyder*, 505 Pa. 214, 478 A.2d 795 (1984). Thus, we have no hesitation in concluding that, where the terms of a contract provide for the payment of interest, a court's award of such interest in favor of the prevailing party is not discretionary.

*TruServ Corp. v. Morgan's Tool & Supply Co.,Inc.*, 614 Pa. 549, 39 A.3d 253, 261–62 (2012).

Total Home Care asserts the evidence introduced at trial established any unpaid balance on the parties' agreements would collect interest at 1.5 percent per month, or at an annual rate of 18 percent, and that Carlevale was aware of and had agreed to this interest rate as is evident in the parties' course of conduct.  Total Home Care also avers Carlevale did not rebut the evidence it had presented relative to the interest rate in the form of invoices all of which indicated that interest would accrue at a rate of 1½ percent on all outstanding balances after thirty days.  Brief for Total Home Care at 15.

The trial court explained the reasoning it employed in calculating the interest award herein as follows:

- 22 -

The legal rate of interest is set by Section 202 of the Act of January 30, 1974 (ACT), P.L. 13, *as amended*, 41 P.S. § 202, which provides:

> Reference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest six per cent per annum.

*Id.* The six-percent rate is applied to, among other things, contract matters where the parties have not specified another rate, and in particular to the award of prejudgment interest. *Daset Mining Co. v. Indus. Fuels Corp.*, 473 A.2d 584 (Pa.Super. 1984). The legal rate of interest is simple interest and may not be compounded. *In re Estate of Braun*, 650 A.2d 73 (Pa.Super. 1994). In awarding statutory rate of interest, the [c]ourt acknowledged it could have used the 18%, but exercised discretion in awarding the statutorily prescribed 6% interest. *See* N.T. Verdict, 7/21/16, at 2.

Trial Court Opinion, filed 1/11/17, at 9. In rendering this portion of its verdict, the trial court simply stated the following:

> The verdict could have been based on 18 percent, but I'm not going to do that. I'm going to base it on the 6 percent interest.
>
> The verdict could have been higher, if I used the 13,400 figure for the HVAC work at Oasis, but I'm giving Mr. Carlevale every benefit of the doubt that I can and using the $8,100 figure, and I'm giving Mr. Carlevale the benefit of a 6 percent.

N.T. Verdict, 7/21/16, at 2.

The parties' agreements clearly provided for the payment of interest at a rate of 1.5% per month, or 18% per annum, for all invoices thirty days past due, and such language evinces the parties intended this increased rate to apply to both prejudgment and post-judgment interest. **See** Trial Court Exhibits; **Pittsburgh Const. Co. v. Griffith**, 834 A.2d 572, 591-93

(Pa.Super. 2003), *appeal denied*, 578 Pa. 701, 834 A.2d 572 (2004). Accordingly, Carlevale had a contractual obligation to pay a rate of interest of 18 percent, and the trial court abused its discretion in reducing the interest rate to 6 percent when fashioning its award. **See TruServ, supra**, 614 Pa. at ___, 39 A.3d at 261-62.

Moreover, the trial court's Order entered on July 26, 2016, did not specify an award of prejudgment interest at all, but instead awarded the statutorily prescribed 6 percent interest rate "until paid." Thus, we remand to the trial court for a calculation of the prejudgment interest and for a calculation of interest thereafter at a rate of 18 percent on the $33,458.29 award until payment is satisfied.

Judgment affirmed in part[8] and reversed in part; case remanded to the trial court for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Bowes joins the memorandum.

Judge Olson concurs in the result.

---

[8] This Court may affirm the trial court's order on any valid basis. **Plasticert Inc. v. Westfield Ins. Co.**, 923 A.2d 489 (Pa.Super. 2007).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017