J-A19007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TODD N. SHAFFER, SHERYL K. SHAFFER, THOMAS C. SHAFFER, AND CAROL E. SHAFFER | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| DEBRA A. LANG | : : | |
| Appellee | : | No. 86 MDA 2018 |

Appeal from the Judgment Entered December 15, 2017
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2017-2531

BEFORE: GANTMAN, P.J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 29, 2018**

Appellants, Todd N. Shaffer, Sheryl K. Shaffer, Thomas C. Shaffer, and Carol E. Shaffer, appeal from the judgment entered in the Centre County Court of Common Pleas in favor of Appellee, Debra A. Lang, and against Appellants in this ejectment action. We affirm.

The relevant facts and procedural history of this case are as follows.

> The dispute between Appellants and Appellee arose over a 7,400 square-foot tract along the western bank of Pine Creek ("the [D]isputed [T]ract"). The [D]isputed [T]ract was included in the description of a 14.8-acre parcel in the following chain of title: (1) a 1976 deed based on a survey performed by Marlin "Red" Wolfe ["the Wolfe Survey"], (2) a May 19, 1987 deed conveying the parcel to Appellants' predecessor, David R. Stinebring, and (3) the April 9, 2009 deed under which Appellants acquired the parcel. As described in their deed, most of Appellants' 14.8-acre parcel was on the eastern side of Pine Creek, with only the [D]isputed [T]ract on the western side of Pine Creek.

Appellee, by virtue of a March 20, 1981 deed, initially acquired an interest in a parcel known as "tract 3" near the western bank of Pine Creek. As described in the 1981 deed and Appellee's successive deeds, her "tract 3" did not include the [D]isputed [T]ract.

On September 15, 2009, five months after Appellants acquired the 14.8-acre parcel, Appellee filed a complaint to quiet title in the [D]isputed [T]ract. Appellee alleged she acquired title to the [D]isputed [T]ract "by reason of adverse possession," and Appellants "attempted to exclude [her] from the [Disputed Tract.]"

The matter ultimately proceeded to a nonjury trial on December 12, 2012. Appellee presented evidence regarding her use of the [D]isputed [T]ract for the twenty-one year prescriptive period. Appellants, in turn, presented evidence that their immediate predecessor, [Mr.] Stinebring, claimed ownership over the [D]isputed [T]ract, but permitted Appellee, as well as the general public, to use the [D]isputed [T]ract. According to Appellants, Appellee's claim of adverse possession was defeated by [Mr.] Stinebring's express grant of permission to use the disputed tract.

At the close of Appellants' case-in-chief, Appellee proffered rebuttal evidence, namely, expert testimony [from Zach Gay] that the 1976 survey conducted by Wolfe erroneously extended [Appellants'] 14.8-acre parcel across Pine Creek to the [D]isputed [T]ract. Appellee thus asserted that [Mr.] Stinebring did not acquire legal title to the [D]isputed [T]ract and could not have granted permission to use the tract. Appellants objected to Appellee's proposed rebuttal evidence, arguing that it introduced theories not set forth in Appellee's complaint. The trial court took the objection under advisement and permitted Appellee to present her rebuttal evidence[.]

Subsequently, when issuing its verdict on May 6, 2013, the trial court overruled Appellants' objection to Appellee's rebuttal evidence. The trial court found in favor of Appellee, concluding: (1) Appellants did not have a claim of right to the [D]isputed [T]ract; and (2) Appellee established

adverse possession of the [D]isputed [T]ract as against Appellants but not "as to 'the world.'" Appellants timely filed post-trial motions, which the trial court denied.

***Lang v. Shaffer***, No. 1435 MDA 2013, unpublished memorandum at 1-2

(Pa.Super. filed October 16, 2014) (internal citations omitted). Appellant

timely filed a notice of appeal.

> [On first appeal], [t]his Court reversed and remanded, concluding the trial court lacked jurisdiction to enter judgment in Appellee's favor because Appellee did not properly invoke the trial court's jurisdiction pursuant to Pa.R.C.P. No. 1061. [This Court] explained:
>
>> If Appellee, as she alleged, were in possession of the [D]isputed [T]ract, the appropriate form of action was to compel Appellant to commence an action in ejectment. If, however, Appellee was not in possession, but asserted an immediate right to possess the [D]isputed [T]ract as against Appellants, a cause of action in ejectment was available. Lastly, if Appellee alleged and established she was not in possession and lacked an immediate right to possession, Rule 1061(b)(2) would govern her action because neither party had recourse to an ejectment action. [...] Despite lengthy proceedings in the trial court, the jurisdictional question of possession was not presented to the court by the parties nor determined by the court. As such, we cannot conclude that the trial court properly entered an order quieting title in favor of Appellee.
>
> * * *
>
> Thus, the appropriate cause of action depend[ed] on which party [was] in possession of the real property. [The] element of possession [was] in dispute. We directed the trial court to resolve that issue, because Appellee's possession, or lack thereof, would determine whether she should file an ejectment or quiet title action.
>
> After remand, Appellee alleged causes of action for **both**

- 3 -

ejectment and quiet title. Appellee alleged she was in possession of the Disputed Tract and asked the trial court to enter an order compelling Appellants to commence an action in ejectment. Thus, Appellee proceeded under Rule 1061(b)(1). Alternatively, Appellee alleged a cause of action in ejectment. Appellants responded on April 17, 2015[,] with an answer and counterclaim for ejectment of Appellee from the Disputed Tract.

The trial court conducted a [remand hearing] on January 13, 2016. At [the hearing], Appellee confirmed that she and her family consistently mowed and cleared brush from the Disputed Tract, put a fire ring on the Disputed Tract, and did gardening, camping, and fishing there. The fire ring was a tire wheel, and it was the only thing that remained on the Disputed Tract until this litigation commenced. … After Appellants purchased the neighboring lot in 2009, they occasionally mowed the Disputed Tract as well. …

In its opinion in support of the February 6, 2016 verdict, the trial court incorporated the reasoning from its May 6, 2013 pre-remand opinion…. Regarding the jurisdictional element of possession, the trial court found: "[Appellee] was in possession of the [Disputed Tract] before, during, and after the commencement of this action." In this scenario, Appellants' entrances on the Disputed Tract after their 2009 purchase of neighboring property are simply temporary trespasses. Despite its finding that Appellee was in possession, the trial court entered judgment in ejectment in favor of Appellee. Once again, we…vacate[d] the judgment and remand[ed], as the trial court's finding of Appellee's possession [was] inconsistent with a judgment in ejectment against Appellants.

*Lang v. Shaffer*, No. 642 MDA 2016, unpublished memorandum at 2-3 (Pa.Super. filed February 27, 2017) (internal citations and footnote omitted).

On June 7, 2017, the court ordered Appellants to file an action in ejectment; Appellants complied on July 7, 2017. On November 22, 2017, the court denied Appellants relief and entered a verdict in favor of Appellee.

Appellants timely filed a post-trial motion on Monday, December 4, 2017, which the court denied on December 11, 2017. The court entered a judgment on the verdict in favor of Appellee on December 15, 2017. Appellants, on January 8, 2018, timely filed a notice of appeal. On January 24, 2018, the court ordered Appellants to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Appellants timely complied on February 12, 2018.

Appellants raise the following issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT HELD THAT [APPELLEE] HAD POSSESSION OF THE PROPERTY AT THE COMMENCEMENT OF THE ACTION DESPITE THE FACT THAT APPELLEE ONLY HAD POSSESSION WITH THE PERMISSION OF APPELLANTS' PREDECESSOR IN TITLE?
>
> DID THE TRIAL COURT ERR WHEN IT FOUND THAT [APPELLANTS'] PREDECESSOR IN TITLE, DESPITE HAVING A DEED THAT CONTAINED WITHIN THE BOUNDARIES OF ITS LEGAL DESCRIPTION THE AREA OCCUPIED BY THE DISPUTED TRACT, DID NOT HAVE SUFFICIENT TITLE TO GIVE PERMISSION TO [APPELLEE] TO OCCUPY THE TRACT OF LAND?
>
> DID THE TRIAL COURT ERR WHEN IT FOUND THAT [APPELLEE] HAD ESTABLISHED ADVERSE POSSESSION OF THE DISPUTED TRACT IN THE FACE OF CLEAR, UNCONTROVERTED TESTIMONY OF [APPELLANTS'] PREDECESSOR IN TITLE THAT HE HAD GIVEN PERMISSION TO [APPELLEE'S] HUSBAND TO CROSS ONTO AND USE THE LAND IN DISPUTE?
>
> DID THE TRIAL COURT ERR WHEN IT STATE[D] IN ITS VERDICT THAT APPELLANTS' PREDECESSORS ASSERT THAT THEY POSTED NO-TRESPASSING SIGNS AND ERECTED OTHER BARRIERS TO PROVIDE NOTICE TO [APPELLEE] OF THEIR CONTINUED CLAIM OF THE PROPERTY DESPITE APPELLANTS' PREDECESSOR'S CLEAR TESTIMONY THAT HE GAVE EXPRESS PERMISSION TO APPELLEE TO USE THE

PROPERTY[?]

(Appellants' Brief at 4).

Appellants argue Appellee did not have possession of the Disputed Tract, but instead had the permission of Appellants' predecessor to use the land. Appellants submit they are record owners of the Disputed Tract because their deed contains the Disputed Tract while Appellee's deed does not. Appellants contend David Sprowls, Appellee's ex-husband, did not object when Mr. Stinebring told Mr. Sprowls that Mr. Stinebring owned the Disputed Tract, and that Mr. Sprowls had permission to use the land. Appellants maintain this conversation, along with another instance when Mr. Stinebring told Patrick Winter, Appellee's paramour, that he had permission to build a tree house on the Disputed Tract, demonstrates Appellants' ownership of the Disputed Tract. Further, Mr. Stinebring heavily used the Disputed Tract from at least 1987 to 2001, and kept the Disputed Tract open to anyone who wanted to use it for recreational purposes. Appellants maintain the record owner of the Disputed Tract retained dominion by confirming with Appellee the true ownership and by expressly granting permission to Appellee to use the Disputed Tract.

In their second and third issues combined, Appellants argue Mr. Stinebring had sufficient title to give permission to Appellee. Appellants aver that after Mr. Stinebring told Mr. Sprowls about the ownership of the Disputed Tract, Mr. Sprowls surveyed the land and established a boundary line in conformance with Appellants' deed. Mr. Stinebring testified that he believed

Mr. Sprowls' actions settled any dispute over who owned the Disputed Tract. Appellants avow Mr. Stinebring's use of the property from 1987 to 2001 interrupts the 21-year prescriptive period necessary to establish Appellee's claim of adverse possession. Appellants assert the description of Appellee's tract 3 states for the boundary to be the west side of Z.A. Weaver's land, Mr. Stinebring's predecessor; thus, there is no gap or gore between Appellants' land and Appellee's land going back to 1976, and Appellee's expert testimony should be disregarded because it contradicts the legal description of the two deeds. Appellants submit they have, and their predecessors had, color of title to the Disputed Tract, and Appellee cannot claim adverse possession when Mr. Stinebring gave Appellee permission to use the Disputed Tract.

In their final issue, Appellants argue the trial court erred when it stated Mr. Stinebring posted the property and erected barriers. Appellants contend Mr. Stinebring never posted the property; instead, he kept the land open to the public during his period of ownership, which places the burden on Appellee to show she prevented use of the Disputed Tract. Appellants conclude this Court should reverse the trial court's verdict in favor of Appellee and award the Disputed Tract to Appellants. We disagree.

Initially, we observe:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the

- 7 -

court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 413-14 (Pa.Super. 2004),

*appeal dismissed*, 588 Pa. 231, 903 A.2d 1185 (2006) (internal citations and

quotation marks omitted).

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

When reviewing the sufficiency of the evidence…this Court must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the fact-finder to find against the losing party. A challenge to the sufficiency of the evidence in a civil case is reviewed on appeal as a claim that the trial court erred in denying a motion for judgment notwithstanding the verdict ("JNOV").

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference.

- 8 -

> Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, 557-58 (Pa.Super. 2006) (internal citations and quotation marks omitted).

In a Rule 1061 action, the court must first determine the jurisdictional question of possession of the disputed land before the court proceeds to the merits of an ejectment action. *Siskos v. Britz*, 567 Pa. 689, 700, 790 A.2d 1000, 1007 (2002). A plaintiff's actual possession meets this jurisdictional requirement for claims based on adverse possession. *Bride v. Robwood Lodge*, 713 A.2d 109, 112-13 (Pa.Super. 1998). Generally, actual possession of land means dominion over the land; it is not necessarily equivalent to occupancy. *Id.* at 113. "There is no fixed rule, however, by which the actual possession of real property by an adverse claimant may be determined in all cases." *Watkins v. Watkins*, 775 A.2d 841, 846 (Pa.Super. 2001). "The determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent, on the character of the premises." *Id.*

> Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession. Pursuant to Rule 1061(b)(1), a possessor of land is entitled to bring an action against one who, although not in possession, has some

claim or interest in the land, compelling that person to assert his or her interest by bringing an action of ejectment, or be forever barred from attacking the title of the possessor. A party will file a Rule 1061(b)(2) Action to Quiet Title when she is not in possession, does not have the right to possess the land, and wishes to determine all rights in the land. The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation.

**Siskos, supra** at 699, 790 A.2d at 1006 (internal citations and quotation marks omitted). **See also** Pa.R.C.P. 1061.

The plaintiff's burden in an action of ejectment is clear: he must establish a right to immediate exclusive possession. In order to recover in an ejectment action, the plaintiff must show title at the commencement of the action and can recover, if at all, only on the strength of his own title, not because of weakness or deficiency of title in the defendant. This rule places upon the plaintiff the burden of proving a *prima facie* title, which proof is sufficient until a better title is shown in the adverse party. The plaintiff in an ejectment suit, as in other cases, need not go further than to make out a *prima facie* case. Until and unless the plaintiff has made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the defendant is not required to offer evidence of his title. If it is admitted or shown that both parties derive their title from a common source, neither party need prove anything regarding the prior title to that property. Further, if the plaintiff traces title to himself from the common source, he thereby makes out a *prima facie* case in his favor, calling upon the defendant to prove his alleged title if he wishes to defeat the plaintiff's apparent ownership.

It is also clear that to support an action in ejectment, the evidence must be sufficient to identify the land in dispute and establish the plaintiff's right to possession thereof. The burden of identifying and locating the land clearly rests upon the plaintiff. In this regard, [the] plaintiff has the burden of presenting definite and certain evidence of the boundary of

the property in controversy. Where the plaintiff is unable to establish his boundary line by adequate legal proof, his action must fall and he is not entitled to relief.

**Hallman v. Turns**, 482 A.2d 1284, 1287-88 (Pa.Super. 1984) (internal citations and quotation marks omitted).

Color of title is the appearance of title, without its reality. **Arcadia Co., Inc. v. Peles**, 576 A.2d 1114, 1117 (Pa.Super. 1990). Where entry to land is made under an invalid deed or other written instrument, which the trespasser believes is valid, the trespasser is deemed to have color of title. **Beck v. Beck**, 648 A.2d 341, 343 (Pa.Super. 1994), *appeal denied*, 540 Pa. 591, 655 A.2d 981 (1995).

> The effect of a color of title is merely to fix the character of the occupant's possession and to define its extent and limits. Mere color of title is valuable only so far as it indicates the extent of the dissei[z]or's claim. This is the law with respect to unseated land, it is the same as to seated. A grantor need not have title to any part of the land conveyed in order to give color of title. If subsequent conveyances continue this color of title, they do not add to the right or give title. … It is necessary for [a] plaintiff to complete the color of title by a real title through possession. Without such possession, deeds giving color of title are unavailing as against one who owns the land or has rights therein.

**Philadelphia Electric Co. v. City of Philadelphia**, 303 Pa. 422, 428, 154 A. 492, 494 (1931). Title acquired by adverse possession "extinguishes all prior claims, including those asserted under color of paper title. Rights under the paper title are extinguished, and the purchaser of a paper title may not[,] ordinarily, prevail." **Plauchak v. Boling**, 653 A.2d 671, 678 (Pa.Super. 1995).

- 11 -

"[A] party claiming title to real property by adverse possession must affirmatively prove that…she had actual, continuous, distinct, and hostile possession of the land for twenty-one years." **Watkins, supra** at 846.

> Each of these elements must exist, otherwise the possession will not confer title.  An adverse possessor must intend to hold the land for [herself], and that intention must be made manifest.
>
> *    *    *
>
> The words visible and notorious possession mean that the claim of ownership must be evidenced by conduct sufficient to place a reasonable person on notice that…her land is being held by the claimant as [the claimant's] own.  To constitute distinct and exclusive possession, it need only be a type of possession which would characterize an owner's use.  Further, in order for adverse possession to ripen into title, it is necessary to show that such possession has been continuous and uninterrupted for the full statutory period. In this Commonwealth, the statutory period is twenty-one years.  The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day.  The word "hostile," as an element of adverse possession does not mean "ill will" or "hostility," but implies an assertion of ownership rights adverse to that of the true owner and all others.  If all of the elements of adverse possession other than hostility are established, the element of hostility is implied.

*Id.* (internal citations omitted).

Instantly, Appellee acquired property in 1981, which included tract 3, a parcel adjacent to the Disputed Tract.  Appellee and her family regularly mowed and cleared brush from the Disputed Tract, placed a fire ring, built two tree houses, and repeatedly used the Disputed Tract for recreation from 1981 through the current litigation.  Appellants acquired a deed to a neighboring

parcel of land, which contained the Disputed Tract, on April 9, 2009. After Appellants asserted their title to the Disputed Tract, Appellee filed a complaint to quiet title on September 15, 2009, and alleged she acquired title by adverse possession.

The court held a bench trial on December 12, 2012. Appellee presented evidence of her use of the Disputed Tract for the 21-year prescriptive period, while Appellants rebutted that their predecessor, Mr. Stinebring, claimed ownership of the Disputed Tract and permitted Appellee and the public to use the Disputed Tract. Appellee's expert testified that the Wolfe Survey erroneously included the Disputed Tract in Appellants' deed. On May 6, 2013, the court entered a verdict in favor of Appellee, concluding that Appellants did not have a right to the Disputed Tract and Appellee established adverse possession as against Appellants but not as to the world. Appellants timely filed a notice of appeal.

This Court remanded the case twice for procedural errors. Upon the second remand, the court determined Appellee had possession of the Disputed Tract and ordered Appellants to file an action in ejectment, per Pa.R.C.P. 1061(b)(1). Appellants complied; the court denied Appellants relief and entered a verdict in favor of Appellee on November 22, 2017. Appellants timely filed a post-trial motion, which the court denied. The court entered a judgment on the verdict in favor of Appellee on December 15, 2017, and Appellants timely filed a notice of appeal.

The trial court set forth its analysis as follows:

> [T]he [c]ourt determine[d] that [Appellee] was in possession of the [Disputed Tract] before, during, and after the commencement of this action. [Appellee's] possession was not nullified or terminated or interrupted by the commencement of shared use, or a shared claim to the [Disputed Tract] by [Appellants]. To rule that [Appellee's] non-confrontational behavior, in the face of [Appellants'] claims would prejudice or jeopardize [Appellee's] claim of possession, is tantamount to encouraging conflict or self-help in the future. If the law would turn a deaf ear to the claims of any who sought redress through the [c]ourts, rather than through challenge or conflict, future possessors would be best served by self-help and confrontation rather than the civil recourse through the law.
>
> [T]he failure to directly challenge the intrusions of [Appellants], after April 2009, did not tarnish or diminish [Appellee's] possession of the [Disputed Tract].

(Trial Court Opinion and Verdict, filed February 8, 2016, at 1). In a subsequent opinion, the court stated:

> [T]he testimony of Zach Gay described the historical chain of title beginning in 1795 and continuing up to, and through, the Deed of Weaver-to-Weaver dated May 22, 1947, (at that time containing 34 acres). From 1795 through the 1947 Deed, and up until [the Wolfe Survey] (set forth in the October 5, [1976], Weaver-to-Bealer Deed), the legal description of the tract had always been called for as running from two distinct points through the center of…Pine Creek.
>
> For reasons that are not explained by [Mr.] Wolfe in his survey, and not explained by [Appellants] in this action, the 1976 Weaver-to-Bealer Deed based on the Wolfe [S]urvey shifted the purported boundary line west across Pine Creek to the location adjacent to [Appellee's tract 3]. The preliminary question for the [c]ourt to resolve, before we can reach the resolution of any issues regarding whether [Appellee] may or may not have established an adequate claim by adverse possession, is whether [Appellants] in this

- 14 -

action have a claim to the land attempted to be adversely claimed by [Appellee]. [The c]ourt [r]ules that [Appellants] do not have such an ownership claim.

The possessor of land can only obtain title to that which the seller had legal right to convey. While [Mr.] Bealer could convey to [Mr.] Stinebring and [Mr.] Stinebring could convey to [Appellants], they could only convey that which [Mr.] Bealer properly received from [Ms.] Weaver in 1976. [Ms.] Weaver could only convey what she legally and properly owned from her deed dated 1947. The reliance, as [Appellants] must, upon the property description from a survey, must rise and fall based upon the strength and accuracy of that survey.

Under the circumstances presented in this case, through the testimony of Mr. Gay, it appears that the [Wolfe Survey] is completely inconsistent with the description of the property that had been use[d] in perpetuity up to the time of the Wolfe [S]urvey. The [c]ourt deems that the property line is not as set by the Wolfe [S]urvey, but as historically described in the chain of title, as running along the midline of…Pine Creek.

Consequently, the land at question in this action is not apparently owned by [Appellants].

The [c]ourt having determined that the lands of [Appellants] are limited to those set forth in the historical description, any claim of right to the disputed property by [Appellants] is judicially extinguished. The [c]ourt must then move on to whether [Appellee's] claim for adverse possession can succeed?

[Appellee's] claim for adverse possession is not as to "the world," but has been made specifically only to [Appellants]. No other party has been put on notice. No other party has been given an opportunity to respond to the action. No other party can be deemed to have lost or surrendered any rights to claim the subject property which is now determined to lie outside [Appellee's tract 3] and outside [Appellants'] 14.8 acre parcel.

> Any claim by [Appellee] to ownership of the disputed parcel can only be accomplished through satisfying all of the legal requirements for such an action. In this action, the only [party] against whom [Appellee] can succeed are [Appellants]. Adverse possession as to the properly served [Appellants] is, however, proper.

Trial Court Opinion and Verdict, filed May 6, 2013, at 4-5. We agree with the court's rationale and adopt its reasoning. *See Hollock, supra*; *Atlantic LB, Inc., supra*; *Bride, supra*; *Watkins, supra*; *Siskos, supra*; Pa.R.C.P. 1061.

The plain language of Appellants' deed was sufficient to meet their burden in an ejectment action to show *prima facie* title. *See Hallman, supra*. Appellee's expert, however, rebutted Appellants' *prima facie* title when he testified to the chain of Appellants' title, which included the erroneous Wolfe Survey in 1976. The Wolfe Survey is the first instance where the Disputed Tract is included in Appellants' deed and merely provided color of title, not real title. *See Philadelphia Electric Co., supra*. Therefore, without real title, Appellants and their predecessors could not give "permission" to Appellee to use the Disputed Tract and to interrupt the statutory period for adverse possession. *See id.*

Appellee established a claim of title by adverse possession with her "actual, continuous, distinct, and hostile possession of the land for twenty-one years." *See Watkins, supra*. From 1981 until 2009, when Appellants acquired a deed to neighboring land, Appellee used the Disputed Tract as an owner would. Appellee and her partners mowed and cleared brush, fished,

constructed two treehouses, and placed a fire ring on the land. *See id.* Appellee's conduct sufficiently placed a reasonable person on notice that the Disputed Tract was being held as her own. *See id.* Mr. Stinebring would occasionally fish from the Disputed Tract, but this conduct was not enough to disrupt Appellee's adverse possession. *See id.* Therefore, Appellee established title by adverse possession, which extinguished Appellants' claim under color of title. *See Plauchak, supra*.

Finally, Appellants' last issue, regarding an incorrect observation by the trial court, is waived for failure to cite to relevant legal supporting authority. *See* Pa.R.A.P. 2119(a); *Lackner v. Glosser*, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments must adhere to rules of appellate procedure and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention). Moreover, even if Appellants had properly preserved this claim, it would not merit relief. We observe the trial court did misconstrue the testimony of Mr. Stinebring, and in fact Mr. Stinebring never posted the Disputed Tract. This misstatement, however, does not affect the analysis of this case or warrant entry of judgment in favor of Appellants. *See Hollock, supra*. Accordingly, we affirm the judgment entered in favor of Appellee.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2018