IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pier 3 Condominium Association,    :
            Appellant    :
                         :   No. 1112 C.D. 2018
         v.             :
                         :   Submitted: March 14, 2019
Ahlam Khalil                :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: April 5, 2019

Pier 3 Condominium Association (Association) appeals from the July 2, 2018 order of Court of Common Pleas of Philadelphia County (trial court) that denied its motion seeking the release of funds that the Office of Judicial Records (OJR) is holding *in custodia legis* pursuant to a court order. The funds total $107,500.00 and are proceeds from a settlement agreement reached between various parties in the civil action of *Khalil v. Diegidio,* May Term, 2008, No. 3145. On appeal, the Association maintains that it is entitled to the funds as a judgment creditor under the Pennsylvania Rules of Civil Procedure (Pa.R.C.P.) governing writs of execution and the enforcement of money judgments. We affirm.

## Facts/Procedural History

As a background for the present dispute, we set forth the pertinent facts and procedural history of our previous decision in *Pier 3 Condominium Association v. Khalil* (Pa Cmwlth., No. 15 C.D. 2013, filed July 9, 2015) (unpublished memorandum) (*Khalil II*):

> On July 15, 2009, the Association filed a complaint, alleging that [Khalil] owned unit 318 (Unit) in the Association's condominium building[,] was delinquent on her assessments and, as a result, [the Association] incurred charges and other fees.
>
> On January 4, 2010, [Khalil] filed an answer and new matter. This pleading included a counterclaim against the Association, seeking damages for a "water/mold/duct dilemma" that allegedly caused [Khalil] to leave the Unit and occurred as a result of the Association's negligent acts and/or omissions in failing to maintain and remedy the common elements area.
>
> On that same date, [Khalil] also filed a joinder complaint against Anne Marie Diegidio, Jason Diegidio (collectively, the Diegidios), and [Wentworth Property Management (Wentworth)]. In the joinder complaint, [Khalil] alleged that the Diegidios owned a unit above hers and created the dangerous condition. [Khalil] further alleged that Jason Diegidio, in his capacity as President of the Association, exerted undue influence upon the Board of Directors, ensuring that the Association would not compensate [Khalil] for her losses. With regard to Wentworth, [Khalil] averred that Wentworth is the Association's property management company and contracted with the Association to maintain the common elements areas and remedy the dangerous condition existing at the Unit. Based upon these allegations, [Khalil] asserted [numerous] counts against the Diegidios and Wentworth . . . .
>
> Prior to the above legal action, [Khalil] filed a separate but related action against [State Farm,] her insurance company,

2

the Diegidios, and Travelers Property Casualty (the "Insurance Action"). In that complaint, [Khalil] alleged that on May 25, 2007, the Diegidios caused water to release from their unit, which damaged property in her Unit. [Khalil] asserted a negligence claim against the Diegidios and a breach of contract and a bad faith claim against Travelers. [Khalil] alleged that Travelers was the responsible insurance carrier for the Association and owed a contractual duty to cover her losses.

Before the Insurance Action proceeded to trial, [Khalil] entered into the Release with Travelers on May 12, 2011. In pertinent part, the Release listed [Khalil] as the "Releasor," Travelers as the "Releasee," and the Association as the "Releasee's Insured." In exchange for monetary consideration, [Khalil] agreed to "forever discharge . . . Releasee of and from any and all claims. . . of whatsoever kind or nature arising from the incident occurring at [the Unit.]"

Thereafter, [Khalil] settled her claims against the Diegidios and [State Farm]. On May 26, 2011, the trial judge marked the Insurance Action settled. *Khalil v. Diegidio,* [] (Pa. Super., No. 1019 EDA 2013, filed April 10, 2014) (unpublished memorandum, "*Khalil I*"), slip op. at 2.

After [Khalil] executed the Release in the Insurance Action, the Association and Wentworth moved for dismissal of [Khalil]'s counterclaims against them in the instant action, contending that the Release's language operated to extinguish those claims. The trial court agreed, and, on July 17, 2012, dismissed all of [Khalil]'s claims against the Association and Wentworth. The case then proceeded to a jury trial solely on the Association's claim against [Khalil] for assessments and fees . . . .

On July 19, 2012, a jury returned a general verdict in favor of the Association in the lump-sum amount of $109,000.00. [Khalil] filed post-trial motions for a new trial . . . .

Meanwhile, [Khalil] refused to accept any payments from the released and settled parties in the Insurance Action and contended, *inter alia*, that the Release would have a negative

3

effect on her counterclaims in the instant action. By order dated September 30, 2011, the trial judge in the Insurance Action . . . concluded that the Release was valid, and directed Travelers [Property Casualty Company] to place . . . $17,500.00 into an escrow account with the court. [The trial judge also directed that Travelers Indemnity Company place $50,000.00 into escrow and State Farm, $40,000.00 into escrow, for a combined escrow amount of $107,500.00.[1]] Over a year later, [Khalil]'s counsel in the Insurance Action filed a motion to withdraw, and the trial judge ordered the case "settled, discontinued, and ended" on January 7, 2013. Then, on February 6, 2013, [Khalil] filed a *pro se* motion for reconsideration, seeking to set aside and/or vacate the Release, which the trial judge denied by order dated March 15, 2013. *Khalil I,* slip op. at 4-5.

On March 19, 2012, [Khalil] appealed all three of the trial judge's above orders in the Insurance Action to the Superior Court, and this Court entered an order staying disposition of this appeal until the Superior Court ruled on the appeal in the Insurance Action. In an opinion filed April 10, 2014, a unanimous panel of the Superior Court quashed [Khalil]'s appeals in the Insurance Action, noting that an appeal does not lie from an order denying reconsideration; [Khalil]'s notice of appeals from the other orders were filed untimely; the trial judge upheld the validity of the release on September 30, 2011; and [Khalil] should have filed a timely appeal from that order within 30 days. *Khalil I,* slip op. at 4-10. Thereafter, by order dated June 16, 2014, this Court directed the Chief Clerk to list this matter for argument and disposition . . . .

*Khalil II*, slip op. at 2-8 (some internal citations omitted).

By opinion and order filed July 9, 2015, this Court in *Khalil II* concluded that the Release barred Khalil's claims against the Association and Wentworth and affirmed the $109,000.00 judgment entered against Khalil and in favor of the Association. *Id.*, slip op. at 9-16.

---

[1] Trial Court Opinion, 9/06/18, at Ex. A-1.

In *Khalil v. Travelers Indemnity Company of America,* (Pa. Super., No. 1290 EDA 2017, filed January 31, 2018) (unpublished memorandum) (*Khalil III*), the Superior Court recounted the factual and procedural history that comprises the next stage of this matter as follows:

> [O]n April 17, 2014, Khalil filed a praecipe for writ of summons in the instant matter [against Travelers]. The case was deferred pending mediation and resolution of prior cases. These settlement negotiations produced the document (Term Sheet) that is at issue in this case. Specifically, on October 1, 2014, Khalil and Travelers signed the Term Sheet that included the following language.
>
> > 1. Global resolution of all claims arising out of or directly or indirectly relating to the May 25, 2007 water damage event at the [Association] (the "Event") . . . .
> >
> > * * *
> >
> > 13. In addition to agreement on all of the terms set forth herein, the settlement and the payments by Travelers Property as set forth above are conditioned upon:
> >
> > (a) The parties reaching agreement on the terms of a final written settlement agreement . . . .
>
> Khalil's Brief, at Exhibit A.
>
> According to Travelers, "[f]ollowing the execution of the Term Sheet at the October 1, 2014, mediation, Dr. Khalil, Travelers Property and their respective counsel began working on the language of an even more formalized document reflecting the global settlement agreement reached at the October 1, 2014, mediation as set forth in the Term Sheet." Travelers' Brief at 6-7. Negotiations continued between Khalil and Travelers, but they "were unable to

5

decide on language of a formal written settlement document." *Id.* at 8.

On February 2, 2016, Khalil filed the complaint in this case, which set forth numerous counts against all defendants related to her position that she was fraudulently induced to settle and discontinue her prior actions by these defendants. On December 13, 2016, Travelers filed a motion to enforce settlement, arguing that the Term Sheet was a global settlement agreement that governed the outcome in the instant matter. On March 22, 2017, the trial court granted the motion.

Here, the trial court concluded that Travelers would pay Khalil a certain sum to settle "all claims arising out of or directly or indirectly relating to the May 25, 2007, water damage even[t] at [the Association]." Trial Court Opinion, 6/29/2017, at 4 (internal quotation marks omitted). Although the trial court recognized that certain conditions, including, "[a]greement to a final written settlement" had to be met, it concluded nevertheless that an agreement was reached. *Id.*

*Khalil III*, slip op. at 2-6.

On appeal, the Superior Court concluded that the trial court erred in determining that the Term Sheet was a valid and enforceable settlement agreement. Accordingly, the Superior Court, by opinion and order dated January 31, 2018, reversed the trial court and remanded for further proceedings. *Id.*, slip op. at 6-7.

Having restated this prelude and history of the case, we now turn to the facts and procedural posture that forms the basis of the current appeal.

Following the $109,000.00 jury verdict entered in favor of the Association and against Khalil, as detailed in *Khalil II*, the Association filed a summons and writ of execution upon the OJR, as garnishee, together with interrogatories pursuant to Pa.R.C.P. No. 3144. After the OJR failed to respond, the Association, on April 17, 2018, filed a praecipe to enter judgment upon default under Pa.R.C.P. No. 3146. The Association also motioned for an assessment of damages and judgment against the OJR

in the amount of $107,500.00, which represents the full amount that was placed into escrow pursuant to court order and as a result of the settlement agreement in *Khalil v. Diegidio,* May Term, 2008, No. 3145, *i.e.*, the Insurance Action. The Association alleged that these funds are the property of Khalil and sought to attach the OJR as a garnishee because it had custody, possession, or control of the funds. (Reproduced Record (R.R.) at 6a-36a.)

On May 21, 2018, Khalil filed a sur-reply in opposition to the Association's motion for an assessment of damages and judgment. Khalil asserted that because "ownership of the *[c]ustodia [l]egis* funds is contested and has not been resolved, the public purpose for which the funds are being held has not been achieved such that the funds are not subject to attachment." (R.R. at 154a.)

For support, Khalil referenced a series of complaints filed in the trial court and alleged that she had claims that remained outstanding. In *Khalil v. Cole,* March Term, 2018, No. 01042, Khalil commenced suit against her former attorneys, averring that the Release discussed in *Khalil II* was invalid as a result of their misrepresentations and asserting claims of fraudulent inducement, fraudulent execution, and civil conspiracy. Khalil also filed a similar complaint against Travelers entities and their attorneys, as well as claims against the Association and Wentworth, *Khalil v. Travelers,* April Term, 2014, No. 019125, *i.e., Khalil III*. In a different action, *Pier 3 Condominium Association v. Khalil*, July Term, 2016, No. 02048 (*Khalil IV*), Khalil pled counterclaims against the Association based upon allegations that the Association, following the judgment in *Khalil II*, breached contractual and tort duties and violated consumer protection statutes and statutes pertaining to condominium associations. (Supplemental Reproduced Record (S.R.R.) at 1b-132b.)

7

The trial court held a hearing on June 28, 2018, on the Association's motion seeking the release of funds that are in the possession of the OJR and denied said motion by order dated July 2, 2018. In an opinion issued in accordance with Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a), the trial court determined that, in general, government entities are granted immunity from attachment and execution and concluded that the funds should remain *in custodia legis*. In so deciding, the trial court found that "the record clearly reveals that there are competing claims for the funds"; that the "ownership, entitlement, and disposition of the funds" is in a state of "flux"; and that releasing the funds may "jeopardize other pending matters." (Trial court op. at 1-2.)

**Discussion**

Before this Court, the Association argues that the trial court erred in refusing to release the settlement funds held *in custodia legis* based on the recognized exception that such funds may be released when the public purpose for retaining the funds has been achieved and the funds are merely awaiting distribution. The Association notes that a trial judge ordered the Insurance Action settled, discontinued, and ended over six years ago, on January 7, 2013, and that this Court in *Khalil II* determined that the Release barred Khalil's counterclaims against the Association and Wentworth. The Association contests whether there are competing claims over, or interests in, the funds and contends that there is no legitimate reason why the funds should remain in escrow.

Generally, a judgment is enforced by filing a writ of execution under Pa.R.C.P. No. 3102. *Ridgeway v. United States Life Credit Life Insurance Co.*, 793 A.2d 972, 978 n.4 (Pa. Super. 2002). However, a court in which an execution

8

proceeding is pending has the inherent power to stay the execution where it is necessary to protect the rights of the parties. *Kronz v. Kronz*, 574 A.2d 91, 94 (Pa. Super. 1990). Pursuant to Pa.R.C.P. No. 3121(b)(2), a court may stay an execution "as to all or any part of the property of the defendant upon . . . a defect in the writ [or] any other legal or equitable ground therefor." *Id.* "The grant of a stay of execution is within the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of that discretion." *In re Upset Sale, Tax Claim Bureau of Berks County*, 479 A.2d 940, 946 (Pa. 1984).

Typically, the Commonwealth and its agencies and political subdivisions cannot be made garnishees by a judgment creditor and are exempt from attachment proceedings. *Koken v. Colonial Assurance Company*, 885 A.2d 1078, 1104 (Pa. Cmwlth. 2005) (Smith-Ribner, J.), *aff'd*, 893 A.2d 98 (Pa. 2006);[2] *Security Bank and Trust Co. v. Rollin, Inc.*, 502 A.2d 232, 233 (Pa. Super. 1985).

> The doctrine of *custodia legis* provides generally that funds or other property in the possession of the Commonwealth or one of its political subdivisions, owing to individuals, are not subject to attachment under the public policy that the government should be free from the annoyance and uncertainty arising out of disputes between those to whom the state owes the property it holds and those claiming a right to the same property by garnishment.

*Ramins v. Chemical Decontamination Corp.*, 560 A.2d 836, 840 (Pa. Cmwlth. 1989). "The Court notes, however, that an exception to this doctrine exists where the public purpose for which the property has been held has been achieved, and the property merely awaits distribution." *Pennsylvania Higher Education Assistance Agency v. Lal*, 714 A.2d 1116, 1119 (Pa. Cmwlth. 1998); *see Weicht v. Automobile Banking Corp.*, 47

---

[2] As a reported single-judge opinion, we cite *Koken* for its persuasive value and not as binding precedent. *See* Section 414(b) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code §69.414(b).

A.2d 705, 706-07 (Pa. 1946) ("Protection of the rule of *custodia legis* is removed when the purpose for which the property is held has been achieved . . . . [I]n this case nothing remained to be done except the manual delivery of the automobile, and that was not sufficient to prevent the . . . attachment.").

In *City of Easton v. Marra*, 862 A.2d 170 (Pa. Cmwlth. 2004), the husband and wife obtained a divorce in 1989; the husband died in 1992; and the wife and the trustee of the husband's estate had not agreed upon a property settlement, particularly with respect to five properties. While the divorce proceeding remained pending, a city sought to collect unpaid taxes on the properties and filed an action under what is commonly known as the Municipal Claims and Tax Liens Act (MCTLA).[3] As a matter of course, a writ of execution was issued, and the properties were scheduled for a sheriff's sale. In response, the wife and trustee filed a petition to stay the execution, contending that the properties were *in custodia legis* and immune from execution because they were subject to outstanding claims for equitable distribution.[4] A court of common pleas stayed the writ of execution and halted the sheriff's sale of the five properties.

On appeal to this Court, the city argued, *inter alia*, that the doctrine of *in custodia legis* does not apply "because the reason justifying the doctrine—preventing public officials from becoming entangled in disputes over debts related to the property—does not exist in the context of a tax sale." 862 A.2d at 172. The city further contended that "the fact that the [] equitable distribution proceedings are ongoing has

---

[3] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§7101-7505.

[4] *See* Section 3502(a) of the Divorce Code, 23 Pa.C.S. §3502(a) ("Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors.").

no bearing on whether the taxes must be paid, how collection is to proceed or in what manner [the wife and trustee] may defend against the [c]ity's action." *Id.* at 173. In addressing these assertions, this Court noted that they "[were] not without merit," but ultimately "[did] not find them persuasive." *Id.*

In *Marra*, we affirmed the stay of execution and reasoned as follows:

> The Court cannot conclude that the [court of common pleas] abused its discretion or committed an error of law by staying the tax sale based on the doctrine of *in custodia legis*. . . . [H]ere there are competing interests seeking to equitably distribute property under the court's supervision. Those interests may be irrevocably prejudiced by an intervening tax sale. In that regard, the [court of common pleas'] order merely stays the tax sale until such time that equitable distribution of the marital property is completed and the delinquent taxes may be paid. The court did not strike the tax liens or otherwise alter [the city's] substantive claims. The court therefore did not abuse its discretion or commit an error of law by staying the sale based on the *in custodia legis* doctrine.

*Id.*; *see also Foster v. Rubenstein*, 118 A.2d 195, 196 (Pa. 1955) (concluding that execution of property based upon a judgment of confession on a bond was properly stayed where an action in equity remained pending and involved the same parties and same general subject matter).

Here, an examination of the docket entries and filings available for civil actions commenced in the Court of Common Pleas of Philadelphia County reveals that there have been 11 civil actions filed in regards to the general subject matter and issues that arose out of this dispute.[5] In the docket number assigned for *Khalil II*, the entries

---

[5] *See* The Philadelphia Courts, Civil Docket Access Sheets, available at: https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_01.zp_personcase_details_idx (last visited March 16, 2019).

11

reflect that subsequent to the trial court's July 2, 2018 order that comprises the basis for the present appeal, the Association filed another writ of execution against the OJR and Khalil on January 24, 2019, and Khalil then filed a motion to stay the execution on February 22, 2019.[6]  By order dated February 25, 2019, a trial judge granted Khalil's motion and expressly permitted the Association to refile a writ of execution at the conclusion of the litigation in *Khalil III*, which, as of February 27, 2019, remains pending in the trial court and is at the summary judgment stage.[7]  To reiterate, in *Khalil III*, Khalil asserted claims against Travelers, lawyers who worked for Travelers, the Association, and Wentworth.  (S.R.R. at 1b-51b.)  Moreover, at the time the trial court in the instant matter issued its July 2, 2018 order, Khalil had counterclaims being litigated against the Association in *Khalil IV*.[8]

Ultimately, if the proceedings in either *Khalil III* or *Khalil IV* resulted (or would result) in Khalil obtaining a money judgment against the Association, then the Association's right to claim an interest in the funds held *in custodia legis* would be diminished accordingly, if not dissipated altogether.  Consequently, similar to the scenario in *Marra*, Khalil and the Association have competing interests to the funds being held *in custodia legis* and there are outstanding claims pertaining to the nature and extent of their entitlement to the funds.  *See Foster*, 118 A.2d at 196, *and compare*

---

[6]    https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames    (Case    ID: 080503145) (last visited March 16, 2019).

[7]    https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames    (Case    ID: 140401925) (last visited March 16, 2019).

[8]    https://fjdefile.phila.gov/efsfjd/zk_fjd_public_qry_03.zp_dktrpt_frames    (Case    ID: 160702048) (last visited March 16, 2019).

*with Weicht*, 47 A.2d at 706-07. Notably, while Khalil's claims in *Khalil III* or *Khalil IV* were and are in the process of being resolved, the Association's substantive claims and judgment in *Khalil II* was and is not impaired, and the only prejudice that the Association has or will suffer is that it has been temporarily deprived of only one option to enforce the money judgment against Khalil.

Quite simply, this is not a situation where the funds are merely awaiting distribution. Rather, there are issues regarding whether, and to what degree or extent, and also to whom, the funds should be distributed. In these circumstances, with such doubt and uncertainty surrounding the funds, we cannot conclude that the trial court abused its discretion in staying the writ of execution and denying the Association's motion seeking the release of funds that the OJR is holding *in custodia legis*.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pier 3 Condominium Association,     :
                 Appellant     :
                              :    No. 1112 C.D. 2018
              v.                :
                              :
Ahlam Khalil               :

## *__ORDER__*

AND NOW, this 5ᵗʰ day of April, 2019, the July 2, 2018 order of Court of Common Pleas of Philadelphia County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge